THOMAS F. SOMERS, JR., TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF THOMAS F. SOMERS, DECEASED, RELATOR-APPELLANT, v. THE BOROUGH OF BRADLEY BEACH, NEW JERSEY; FRANK C. BORDEN, JR., BERNARD V. POLAND AND JOHN ROGERS, BOARD OF COMMISSIONERS, AND WILLIAM P. MEGILL, INSPECTOR OF BUILDINGS, RESPONDENTS.

Argued February 13, 1935—Decided May 17, 1935.

For the relator-appellant, *Lionel P. Kristeller*.

For the respondents, *Joseph R. Megill*.

The opinion of the court was delivered by

CASE, J.  The appeal is from a judgment of the Supreme Court in a *mandamus* proceeding wherein that court, on the bringing on of the matter for oral argument at the January, 1935, term, forthwith overruled a demurrer to the return and dismissed, without opinion, the alternative writ theretofore allowed the appellant.  The summary action of the Supreme Court seems not to have been in the exercise of its discretionary control of prerogative writs or upon a factual determination that the uses now and heretofore made of the land in question and of other lands in the neighborhood do not merit a statutory "special exception" hereinafter mentioned, but, as represented to us without contradiction, for the purpose of having the meritorious questions, which we assume to be of law, brought promptly to us for review.

Appellant desires to erect a gasoline and oil filling station on a plot of land owned by him at the southwest corner of Ocean and Fifth avenues in the borough of Bradley Beach and seeks an appropriate building permit.  The writ was directed to the board of commissioners and the inspector of buildings and required them to issue the permit or to signify cause to the contrary.

The facts against which the demurrer ran were stipulated to the court below as an agreed special case.  It appears in part:

In January, 1920, the borough passed a building ordinance whereby the issuing of a municipal permit became a preliminary essential to the erection, alteration or repair of a building.  By the terms of the ordinance the permit was to be issued at the order of the board of commissioners upon the report of the inspector of buildings that "this and other ordinances of the borough" were complied with.  In December, 1923, the board of commissioners of the borough adopted a zoning ordinance setting off the borough into various "commercial" and "non-commercial" zones and prohibiting business trade or industries within the non-commercial zone.  The lot in question was and is in an area zoned as noncommercial and is more than one hundred and fifty feet from

a commercial zone. The land lying between the easterly line of Ocean avenue on the west, the high water mark of the Atlantic ocean on the east and between the northerly and southerly lines of the borough—being the entire beach front as far inland as Ocean avenue—is, by the terms of the ordinance, not zoned either as "commercial" or as "non-commercial." In that area there are no zoning restrictions. All of that property is owned by the borough of Bradley Beach. Nevertheless, on it and across the street from the premises of the appellant there are, and have been for upwards of twenty-five years past, public bath houses and refreshment stands vending ice cream, beverages, cigars, cigarettes, sandwiches and frankfurters. The appellant's land has been used continuously since long before 1923 for commercial tennis courts and the sale of tobacco and of food and liquid refreshments. The ordinance contained no provision for a board of adjustment or other machinery for the supervision or enforcement of its mandates. Appellant made application under the building ordinance for a permit and was denied by the board of commissioners of the borough because "it was sought to erect a commercial structure in a non-commercial zone."

The question for us to decide is whether there was an effective zoning ordinance, for the restriction against business uses in specified zones lay only in that enactment. The restriction had no definite or substantial relationship to the safety, health, morals or general welfare of the community and therefore was invalid (*State* v. *Nutley,* 99 *N. J. L.* 389; *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,* 106 *Id.* 183), and could not justify the municipal refusal unless the ordinance was validated by the zoning amendment of 1927 to the constitution and by the enabling act passed under the authority thereof. *Pamph. L.* 1928, *ch.* 274.

Section 7 of the 1928 statute provides that "whenever any municipality shall have adopted an ordinance, or ordinances, prior to the adoption of this act, for any of the purposes set forth in this act, such ordinance, or ordinances, shall continue in effect as if they had been adopted under the provisions of this act." It is to be noted that an earlier ordinance is made

effective *"as if   \*   \*   \*   adopted under the provisions of this act."*   *Durkin Lumber Co.* v. *Fitzsimmons, supra.* Would the borough zoning ordinance have been valid if it had been adopted subsequent to the passage of the 1928 statute? If it would not have been valid under a subsequent adoption, its earlier passage cannot save it; particularly since six years had elapsed between the passage of the zoning statute and the raising of the present issue, abundantly ample for the borough to have amended its ordinance to conform with the statute had such been the purpose. The zoning statute in section 9 provides that the governing body shall provide for the appointment of a board of adjustment and "in the regulations and restrictions adopted pursuant to the authority of this act shall provide that the said board of adjustment may   \*   \*   \*   make special exceptions;" that the board of adjustment shall consist of five members who shall not hold any elective office or position under the municipality, vacancies to be filled for the unexpired term; that the chairman of the board shall have power to issue subpœnas for the attendance of witnesses and the production of records and may administer oaths; that appeals may be taken to the board of adjustment by any aggrieved person and that there shall be a hearing thereon, of which due notice shall be given.

We have recited the statutory powers of the board of adjustment sufficiently to reflect the very important and, as we think, the essential place which that board occupies in the legislative scheme. The general framework of section 9 of the 1928 statute was taken almost bodily from *Pamph. L.* 1925, *ch.* 58. The board of adjustment as there constituted was said by Chief Justice Gummere in *Chancellor Development Corp.* v. *Senior,* 4 *N. J. Mis. R.* 633, to be "a tribunal of review;" by Mr. Justice (now Chancellor) Campbell in *Hendey* v. *Ackerman,* 103 *N. J. L.* 305, to be a *"quasi-*judicial" body; and by various other Supreme Court decisions "to act judicially," *State* v. *Dowling,* 5 *N. J. Mis. R.* 180; *Feldman et al.* v. *Board of Adjustment,* 6 *Id.* 520; *Ewald* v. *Board of Adjustment, Ibid.* 532; *Benbak Construc-*

*tion Co.* v. *Board of Adjustment, Ibid.* 543. The statute contains provisions for creating drastic limitations upon the uses to which an owner may put his property. As a part of the scheme the legislature commanded that a governing body in passing a zoning act thereunder should provide for the appointment of this *quasi*-judicial body known as a board of adjustment. That mandate has been wholly ignored in the borough of Bradley Beach. The record shows no finding upon, and no consideration of, the question of whether or not the property should be made one of the "special exceptions" to the terms of the ordinance. Whether the exception, if granted, would or would not require the approval of the board of commissioners need not be decided. It cannot be said what the commissioners would have done in the face of factual findings and of recommendations made by a board of adjustment. The property owner was deprived of a process provided by statute. For the views of the Supreme Court and of the Court of Chancery on the importance of the board of adjustment under, however, different factual and legal issues, see *Schumacher* v. *Union City,* 9 *N. J. Mis. R.* 492, and *Ostrowsky* v. *Newark,* 102 *N. J. Eq.* 169.

The procedure for the lawful ascertainment of facts and for judicial action thereon is, in our opinion, an essential adjunct to a zoning ordinance dependent for its validity upon the 1928 statute whether the ordinance was adopted before or after the passage of the statute. Respondents cite *Smith* v. *Kearny,* 6 *N. J. Mis. R.* 954, *contra.* In that case the superintendent of buildings denied an application for a building permit. Appeal was taken to the "zoning board of appeals," which reversed. *Certiorari* issued at the instance of a neighboring owner adversely affected by the proposed construction. The Supreme Court held that the zoning board of appeals was an illegally constituted body and that therefore a judgment by it was void. Apparently there was no issue and no decision upon the question whether a statutory appeal body was necessary under the 1928 enabling act. There were rather numerous decisions by the Supreme Court following closely upon the passage of the enabling act wherein

the court in its discretion refused to use its prerogative writs to compel municipal zoning action, as in *Koplin* v. *South Orange, Ibid.* 489, where the proposed construction had "been declared by legal authority to be a menace to the safety of the community," and in *Hansbury Construction Co.* v. *Miller, Ibid.* 604, wherein it had "been declared by legal authority to be improper for the safety of the community." But no question of safety is injected in the present case, and the intervening years have, as already remarked, given the municipalities full opportunity to make their zoning acts comply with the statute. Moreover, the question with us is one of right and not of discretion.

Respondents present no objection to the procedure by writ of *mandamus.* Under the facts of the case that seems to be an appropriate remedy. *Goldberg* v. *Jersey City, 6 N. J. Mis. R.* 564.

We conclude that the ordinance is ineffective in its prohibitory provisions against the appellant's lands. That leaves the application for permit to be controlled by the 1920 ordinance, concerning which, and the compliance with which, there is no dispute. The demurrer to the legal sufficiency of the facts should have prevailed. The judgment below, overruling the demurrer, will be reversed and the record remitted to the Supreme Court.

*For affirmance*—WELLS, J. 1.

*For reversal*—THE CHANCELLOR, LLOYD, CASE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ. 10.