### MARTIN v. PORTLAND PIPE LINE CO.
No. 4191.

Circuit Court of Appeals, First Circuit.

Dec. 27, 1946.

Caspar F. Cowan, of Portland, Me., (Frank I. Cowan, of Portland, Me., on the brief), for appellant.

Edward W. Atwood, of Portland, Me. (Leonard A. Pierce and Hutchinson, Pierce, Connell, Atwood & Scribner, all of Portland, Me., on the brief), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and FORD, District Judge.

FORD, District Judge.

This is an appeal by Leighton L. Martin from a final judgment of $495.08, entered May 2, 1946, upon a jury verdict, in condemnation proceedings against land of appellant in the Town of Raymond, Maine.

In Section 2 of a condemnation statute, 55 Stat. 610, 15 U.S.C.A. preceding section 715 note, Congress provided that whenever the President found that the construction of any pipe line for the transportation or distribution of petroleum or its products moving in interstate commerce, or the extension or completion of any such pipe line already wholly or partially constructed, is or may be necessary for national defense purposes, he should by proclamation declare such finding. By Section 3 of the statute the person undertaking such construction,

extension, or completion was authorized to acquire "such land or interests in land, including rights-of-way or easements, by the exercise of the right of eminent domain, as, in the opinion of the President, may be necessary for such purposes, and for purposes of operation and maintenance of such pipe line."

The President by a proclamation dated October 1, 1941, found among other things (a) "that it is necessary for national defense purposes that there be constructed and completed a pipe line system * * *" commencing at South Portland, Maine, and extending to Northern Vermont, there to connect with a pipe line extending through the Province of Quebec to a terminal near Montreal, Canada; (b) that the appellee had commenced the work necessary for the construction of such a pipe line system and that it was "necessary for the purposes of construction, completion, operation and maintenance of said pipe line system that the Portland Pipe Line Company have the right to acquire, by the exercise of the right of eminent domain * * * easements and rights-of-way, not in excess of 100 feet in width for the construction, completion, operation, maintenance and removal of the pipe lines, * * *."

By a Declaration of Taking filed October 22, 1941, the appellee took a right of way and easement across a strip not over 50 feet in width over certain parcels of land, among them that of appellant, for the purpose of constructing, completing, operating, maintaining, and removing a pipe line or pipe lines not in excess of two lines, for the transportation and distribution of petroleum and petroleum products. Judgment on the Declaration of Taking was dated October 22, 1941, and the appellant seasonably filed (a) a motion to vacate the judgment entered on the Declaration of Taking and (b) a motion to dismiss the proceedings, which were denied and the case proceeded to trial. The ground relied upon in the motions is that the taking by the condemnor was not in accordance with the Presidential proclamation.

The sole question involved in this appeal is whether the estate and interest taken by the appellee by its Declaration of Taking was authorized by the statute of July 30, 1941, and the Presidential proclamation issued by virtue of it.

The appellant argues that the appellee was granted power by the statute and Presidential proclamation either (1) to take an easement for one line of pipe only, or (2) to take an easement for whatever number of pipes might be necessary to satisfy national defense purposes, and in the latter case it was necessary for the government (Congress, the President, or both) to determine and approve the number of pipes that could be laid; in other words, he contends that the appellant had no discretion in determining the number of pipes needed for the completion of its pipe line. We reject both contentions; they are without substance.

■ It would necessitate an exceedingly narrow interpretation of the term "pipe line" in the statute and the term "pipe line system" in the President's proclamation to determine that the statute and proclamation authorized the taking by appellee of an easement for one line of pipe only. The title to the statute states that it was passed "to facilitate the construction * * * of interstate petroleum *pipe lines* related to national defense." (Emphasis supplied.) There is nothing in the statute to indicate that Congress authorized the President to grant the power of eminent domain to a person installing only one line of pipe for the transportation of petroleum. Rather the power given to the President was to grant the power to those constructing or completing pipe line systems, whether the latter consisted of one or more lines of pipe. The contention that Congress in the emergency it knew existed at the time of the enactment of the statute had in mind the construction or completion of only one pipe system is finely drawn, to say the least. Nor did the President in his proclamation limit the taking to an easement for one line of pipe only. Throughout the proclamation the term "pipe line system" is used. It is plain the President authorized Portland to take easements for more than one line of pipe and properly so under the terms of the statute. The

proclamation of the President complied in every particular with the terms of the statute.

The remaining contention is that the authority conferred by the President was limited to an easement that would satisfy national defense purposes and it was for the government to determine and approve the number of pipe lines necessary for that purpose. Under Section 2 of the statute the function to be performed by the President was to find that national defense purposes required the construction of a pipe line or the extension or completion of one wholly or partially constructed. Under Section 3 it was the President's function to find what land or interests in land were to be taken for such construction or completion. Both these functions were performed. There is no requirement in Section 3 or any other part of the statute that the President should determine the number of lines of pipe necessary for national purposes. It was not the President's concern as to how many lines of pipe were necessary to complete the system appellee had started to construct. The President's concerns were the necessity of the system for national defense purposes and the extent of the easement granted. The President complied in every particular with the requirements of the statute. The number of pipes to be laid pursuant to the easement was appellee's concern. The petitioner was the one to decide how many lines of pipe were necessary to complete its system, having in mind that the width of the easement was limited to 100 feet. When it decided to take an easement of only 50 feet in width, and limit the lines of pipe to two, the appellee was not exercising, and was not compelled to exercise, any judgment as to what was necessary for national defense purposes. The President had already performed that function in finding the appellee's partially completed system would serve that purpose. Nor was the petitioner, as appellant contends, when it took an easement for two lines of pipe arrogating to itself the authority to decide the maximum and minimum of

the amount of service it would render the government in transporting oil to Montreal. All that it did was to take what it thought was necessary to carry oil to the points designated at the time of the taking. Indeed, if appellee took an easement for more pipe lines than it needed for such purpose, appellant might rightly complain that his rights as a landowner were transgressed. It is plain that if the petitioner needed further easements for additional lines, under the terms of the Presidential proclamation it could take them under a new Declaration of Taking up to June, 1943, and, in all probability, would have done so if additional lines were required for larger oil gallonage.

Finally it should be said that the number of lines of pipe that were needed to carry oil to Montreal was a detail that lay in the discretion of the petitioner to decide. Donees of the power of eminent domain are allowed considerable discretion with respect to details, e. g., determination of what property is necessary in the exercise of the grant. It seems obvious that determination as to the number of pipes to be laid pursuant to the easement granted in the present case was a detail to be determined by the appellee and should not be disturbed in the absence of fraud or bad faith. 18 Am.Jur., Eminent Domain, Section 108. It would be thoroughly impractical and inappropriate for the government to determine this detail, especially where the power of eminent domain was granted to a private corporation which had already started construction of a pipe line system and, in all probability, with an eye to future needs (18 Am.Jur., Eminent Domain, Section 111), had determined from an engineering standpoint the requirements of the contemplated system.

The appellee did not exceed its authority in its Declaration of Taking and the District Judge committed no error in denying appellant's motion to vacate the judgment entered on the Declaration of Taking and his motion to dismiss.

The judgment of the District Court is affirmed.