Eager, J.
The petitioner, in this article 78 proceeding, seeks hereby to acquire the right to erect and maintain a high-tension overhead electric transmission line through a residence district in the village of Briarcliff Manor, N. Y. The proceeding is brought against the building inspector and the zoning board of appeals of the village, and others, to review, reverse and annul the decision of the board rendered April 11, 1955, denying to the petitioner a variance for the erection of the line, or, in the alternative, to secure an order in the nature of a mandamus order directing the respondents to issue to it the necessary building permit, such alternative relief being sought on the theory that the provisions of the village zoning ordinance prohibiting the erection of a high-tension electric line in the village are illegal and void. (The proceeding has been dismissed as against the village, and as against the Mayor and trustees thereof.)
The petitioner is an “ electric corporation ’ ’ pursuant to section 2 of the Public Service Law, and is a <e gas and electric corporation” as defined in section 10 of the Transportation Corporations Law. It has franchises and contracts to furnish electric service generally throughout Westchester County, with the exception of the northeast portion thereof, and particularly has a franchise for the furnishing of such service in the village.
No electricity is generated in Westchester County. The northern and central parts of the county, including the village, are presently supplied by means of an existing high-tension overhead line maintained by petitioner and running through the county, generally along the Catskill Aqueduct (known as the Aqueduct line), between petitioner’s Dunwoodie substation in the city of Yonkers to its Millwood substation in the town of New Castle, and then running north to the Putnam County line, where it connects with the lines of the Niagara Mohawk Power Corporation. It is admitted that, owing to an increase in population, *298 increased commercial and industrial use, and the increased domestic use of power for such heavy duty appliances as air conditioning, ranges, television, etc., the said Aqueduct line is of insufficient capacity to take care of proper and adequate service in the near future, and that an additional high-tension line should at this time he installed to make a loop with the Aqueduct line.
To meet the need for additional transmission facilities, the petitioner proposes a high-tension steel tower electric line running 19.6 miles through Westchester County between petitioner’s said Dunwoodie and Millwood substations. Approximately 4,000 feet of the line would run through the village and 5 of a total of 142 towers would be within the village.
It appears that the petitioner, in 1942 and 1943, in preparation for the future increased demand for energy, acquired the right of way for the new transmission line. In 1954, the petitioner determined it was necessary to proceed with the construction of the line, and subsequently obtained permits from the appropriate municipal authorities of the Towns of New Castle, Mount Pleasant and Greenburgh and of the Villages of Elmsford and Ardsley so that the entire 19.6-mile line is now authorized except for the portion thereof passing through the village of Briarcliff Manor.
It further appears that the petitioner is the owner of, or has easements over, a continuous strip of land not less than 200 feet in width for the 4,000-foot segment of its proposed line running through the village. These premises were acquired by means of voluntary purchases, and at the time of the acquisition thereof, they were located within a duly zoned residence district. The lands now lie wholly within a residence district according to the terms and provisions of the present zoning ordinance and map of the village, and by virtue of the terms and provisions of the ordinance, the use of the lands in such district for electric transmission line purposes is absolutely forbidden. In fact, the ordinance by its terms excludes the proposed public utility use in any district other than in a B2 general business district. Such B2 district as presently laid out in the village comprises only a small area thereof, and is wholly inadequate for the proposed line, which could not go through the village if confined to said B2 district.
The board of appeals, in denying the variance sought by the petitioner, rendered a very complete and well-reasoned opinion and decision. It is apparent that, under all the circumstances, its determination denying the variance was a correct one. There *299 is nothing in the record tending to establish that its determination was arbitrary or unreasonable. In my opinion, the board correctly held that the situation was not one of practical difficulty or unnecessary hardship justifying a variance. The decisions of Matter of Consolidated Edison Co. of N. Y. v. Gillcrist (283 App. Div. 718) and Matter of Long Island Lighting Co. v. Incorporated Vil. of East Rockaway (279 App. Div. 926, affd. 304 N. Y. 932), particularly support the determination of the board. Incidentally, it is my further opinion that section 8B of the local ordinance does not have the effect of enlarging upon the general powers and functions of the board in the matter of the granting of variances. Said section 8B merely has the effect of supplementing the provisions of the Village Law (§ 179-b) by specifically setting forth what the board is required to find to justify the granting of a variance by reason of practical difficulties or unnecessary hardship.
There remains the question whether or not the petitioner is entitled to an order in the nature of a mandamus order directing the issuance of a permit on the theory that the provisions of the local ordinance are invalid and ineffective insofar as they prohibit the installation and maintenance of an alleged necessary public utility service. The zoning board of appeals very correctly held that, “ The question of the validity or constitutionality of our zoning ordinance is not in issue before this board.” The board is not a court and may not pass upon the constitutionality or legality of the zoning ordinance under which it is authorized to act. (Baddour v. City of Long Beach, 279 N. Y. 167; Matter of Otto v. Steinhilber, 282 N. Y. 71; Matter of Cherry v. Brumbaugh, 255 App. Div. 880; Matter of Selleck v. Waterbury, 257 App. Div. 1049; Matter of Municipal Gas Co. of City of Albany v. Nolan, 121 Misc. 606, affd. 208 App. Div. 753.) The question of whether or not the ordinance is valid is, however, properly before the court in this proceeding. Where the only bar to a building permit is a certain ordinance provision prohibiting the proposed use of the particular premises, and the owner would be entitled to the permit as a matter of right except for Such provision, the validity of the provision may be challenged and the issue determined in an article 78 proceeding brought to obtain an order directing the issuance of the permit. (See Smith on Law and Practice of Zoning, § 153 and cases cited; Matter of Cherry v. Brumbaugh, supra; Matter of Romig v. Weld, 276 App. Div. 514.)
Now, upon the undisputed facts, there is necessity for the public utility improvement proposed by the petitioner and the *300 only bar to the same is the local ordinance of this village. The question is, does this village have the right to absolutely bar the passing through it of a high-tension electric line required in the interests of the public. In this connection, it is to be noted that public utility corporations of the nature and type of the petitioner are created and regulated by State law. There is the absolute mandate by State law that the petitioner shall ‘1 furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable.” (Public Service Law, § 65, subd. 1. See,- also, Transportation Corporations Law, § 11.) The petitioner has the franchise and right, and furthermore the duty, subject to reasonable regulations, to erect and maintain the proposed transmission line, and no local governmental unit shall nullify or interfere with that right and duty. Such a unit may not, without unequivocal and express statutory grant of authority, enact a local ordinance tending to abrogate or contravene the State law and policy with respect to such a utility. The general grant of power to a municipality to adopt zoning laws in the interest of public welfare does not have the effect of permitting the local legislative body to override such State law and policy. Thus, the provisions of the particular zoning ordinance of this village are invalid insofar as they absolutely prohibit the petitioner from constructing and maintaining through the village a publicly needed high-tension electric line. (See Long Island Lighting Co. v. Village of Old Brookville, 72 N. Y. S. 2d 718, affd. 273 App. Div. 856, affd. 298 N. Y. 569; Matter of Municipal Gas Co. of City of Albany v. Nolan, supra; Matter of Long Island Lighting Co. v. Griffin, 272 App. Div. 551, affd. 297 N. Y. 897; Union Free School Dist. No. 14 of Town of Hempstead v. Village of Hewlett Bay Park, 279 App. Div. 618, and Jewish Consumptives’ Relief Soc. v. Town of Woodbury, 230 App. Div. 228, affd. 256 N. Y. 619.)
Furthermore, such provisions of the ordinance are invalid as in derogation to the petitioner’s constitutional rights. It is well settled that zoning legislation must find its justification in the exercise of the police power in the interests of the public. Where the provisions of a zoning ordinance restricting the use by a landowner of his lands do not tend to promote the public interest and general welfare, they may not be justified as being a proper exercise of the police power and they are invalid. (See Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 196.) Here, the provisions of the ordinance of this village, operating to stand in the way of necessary public utility development, *301 are contrary to rather than in the interest of general welfare. The fact that such provisions may be said to promote the health, safety or welfare of a few neighboring property owners is no justification therefor where they are in derogation of general public welfare. Consequently, in addition to the provisions being invalid as tending to override the State law providing for public utility service, they are unconstitutional. Specifically, so far as petitioner is concerned, they offend against the due process and equal protection clauses of the Federal and State Constitutions and may not stand as authorized by the police power.
The position taken by the respondents is that there is no necessity that the electric transmission line go through the village. They do not dispute the need for the improvement, but claim that they have the absolute right to exclude the line from the village, saying, in effect, that it is up to the petitioner to reroute its fine around the Milage through the town of Mount Pleasant. They have interposed by answer a separate and distinct defense (the third stated defense) alleging that a predecessor of the petitioner, in planning the particular line, had originally decided to by-pass the village, that the original proposed by-pass line, running through the town of Mount Pleasant is in fact less expensive and more feasible from an engineering standpoint, and “ that there was no reasonable necessity for changing the course of the transmission line * * * and causing the same to pass through a residential section of the Village of Briareliff Manor ”. In my opinion, however, the position and defense of the respondents are not sound. The availability of another route for the line is not properly an issue for litigation in this proceeding. It is clear that it is not the prerogative of the village nor of the respondents to dictate where the line shall be located. If this village could ban the proposed line entirely from its limits, so could every other municipality in the county. One municipality, especially where it uses particular public utility services, may not, so to speak, dump tbe undesirable facilities necessary to furnish such services upon the lap of an adjoining municipality. It is the province of the petitioner to lay out, locate and maintain this particular line, that is, provided it acts in accordance with State law- and policy. Its discretionary powers and actions in this respect may not be questioned by local authorities and are not subject to court supervision, provided, of course, it acts in good faith and in accordance with valid regulations. (See for instance, Matter of New York & Harlem R. R. Co. v. Kipp, 46 N. Y. 546, 553; Transcontinental Gas Pipe Line Corp. v. Borough of Milltown, 93 F. Supp. 287, and 29 C. J. S., Eminent Domain, § 91.)
*302 I have not overlooked the claim of the respondents that the establishment of the line as proposed will result in considerable consequential damages to certain individuals and property owners. Neighboring property values will be depreciated to some extent, but it is to be borne in mind that pecuniary profits of an individual are secondary to the public welfare. (Shepard v. Village of Skaneateles, 300 N. Y. 115.) There are bound to be individual losses and hardships wherever the line is located. But, it is apparent that there is real public need for the proposed line, and incidental damages, inconvenience and annoyance of individuals may not stand in the way of tailing care of such need. Of course, reasonable local regulation of public utilities is permissible to alleviate as much as possible private damage and annoyance caused by utility installations. A village may, within reason, regulate public service improvements, but may not ban them altogether.
In view of the answer and position taken by the respondents, I find that there is no issue of fact requiring a trial. Final order shall be granted herein directing the issuance of the building permit sought, without prejudice, however, to the imposition by the proper authorities of such regulations as may be proper under the circumstances. No costs. Submit order on notice.