Peter T. KROEGER t/a Mobile Radio Dispatch Service, Plaintiff,

v.

Kenneth F. STAHL, Building Inspector of Greenbrook Township, A Municipal Corporation of New Jersey, the Board of Adjustment of Greenbrook Township and the Township of Greenbrook, A Municipal Corporation of New Jersey, Defendants.

Civ. A. No. 509–56.

United States District Court
D. New Jersey.

Jan. 7, 1957.

---

Frederick F. Richardson, New Brunswick, N. J., for plaintiff.

John Andrew Reid, Plainfield, N. J., for defendants.

FORMAN, Chief Judge.

In his complaint in this action, plaintiff, Peter T. Kroeger, trading as Mobile

Radio Dispatch Service, alleges that he is a mobile land station radio operator, servicing diversified customers' mobile units in two-way radio communication both within and outside New Jersey, and licensed by the Federal Communications Commission, and that he desires for greater effectiveness in the operation of his business to transfer his presently operated station at New Brunswick, New Jersey, to a location on property he has purchased near Washington Rock, in Greenbrook Township, Somerset County, New Jersey. He further alleges that authorization to conduct radio tests at the proposed site was granted by the Federal Communications Commission, preparatory to a final determination by the Commission of the appropriateness of the proposed location; that an application was made by the plaintiff to defendant, Kenneth F. Stahl, Building Inspector of Greenbrook Township, for a building permit to construct a 75 foot radio mast, and a housing at the base of the mast for the necessary electrical equipment on his property in Greenbrook Township; that the application was denied on the ground that a zoning ordinance did not permit such a use in a residential zone.

Plaintiff claims that the refusal prevented him from carrying out what amounts to an order of the Federal Communications Commission. Plaintiff further claims that the zoning ordinance is an arbitrary and unreasonable exercise of the police power of the municipality by the defendants, the Board of Adjustment of Greenbrook Township and the Township of Greenbrook, in that it deprives him of property without due process of law and violates the equal protection clause of the Fourteenth Amendment; that operation of the zoning ordinance amounts to an undue burden on interstate commerce; and that his claimed status as a "public utility" renders him immune from the provisions of the zoning ordinance.

He prays for a judgment, among other things, requiring the defendants to cease and desist from interfering with the construction of the structure designed to conduct the tests and the operation thereof.

Defendants, in addition to challenging the plaintiff's assertions, interpose the objection that plaintiff is not properly before this court because of failure to have exhausted his administrative remedies.

## I.

■■ Proceeding at once to the jurisdictional question, it is well established that a suitor must exhaust his administrative remedies before seeking the extraordinary relief of a court of equity. Natural Gas Pipeline Co. of America v. Slattery, 1937, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276; Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S. Ct. 459, 82 L.Ed 638. But what remedy is plaintiff seeking that an administrative board may grant? He is seeking, not a variance, but to have the ordinance declared unconstitutional, a remedy beyond the jurisdiction of a board of adjustment. Honigfeld v. Byrnes, 1954, 14 N.J. 600, 103 A.2d 598; Fischer v. Township of Bedminster, 1950, 5 N.J. 534, 542, 76 A.2d 673. To this extent, then, plaintiff is properly before the court.

## II.

The initial question presented by the plaintiff is whether the temporary authorization issued by the Federal Communications Commission was an "order" enforceable in a United States District Court, as contemplated in the provisions of the Federal Communications Act.[1]

---

1. The pertinent provision of the Act is as follows:

 "(b) If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same,

The paper itself is dated May 15, 1956, and is entitled specifically a grant of "Special Temporary Authorization" (Plaintiff's Exhibit 1A). It authorizes the plaintiff for a period of 90 days (which was later extended) at the location referred to in this suit to conduct tests to determine the extent and nature of the interference caused to Domestic Public Mobile Radio Station KEA 200 at Yonkers, New York, and Station KEA 255 at Hempstead, New York.

Among others, the paper contains the following conditions:

"This special temporary authorization is granted upon the express condition that it may be terminated by the Commission at any time without advance notice or hearing if in its discretion the need for such action arises. Nothing contained herein shall be construed as a finding by the Commission that the authority granted herein is or will be in the public interest beyond the express terms hereof.

"This special temporary authorization shall not vest in the grantee any right to operate the station nor any right in the use of the frequencies designated in the authorization beyond the term hereof, nor in any other manner than authorized herein. * * *"

It did not direct plaintiff or any one else to do anything. It simply granted a request of plaintiff that he be permitted to conduct certain tests under limited conditions expressed therein. A copy of the paper was sent by registered mail to the Building Inspector on June 6, 1956, by the plaintiff, five days before he commenced this suit.

Under the provisions of the Administrative Procedure Act of 1946, 5 U.S.C. A. § 1001(d), an "order" is defined as follows:

the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents, or representatives of

" 'Order' means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency in any matter other than rule making but including licensing * * *."

In the instant case, without going into the question of whether defendants had been "duly served" with the "order", the permit issued to plaintiff was, as its title indicates, a "special temporary authorization", and not a final disposition.

■ In the light of this definition and the character of the temporary authorization as being in the nature of a grant or permission to plaintiff in fulfillment of his application to make tests, it would appear that its binding effect is only upon plaintiff and the radio stations named in it to the extent that the tests affecting them are permitted. It cannot be construed as an order encompassing the defendants in this case cognizable under Section 401(b) of the Federal Communications Act.

### III.

The really crucial issue raised by the plaintiff is whether the zoning ordinance constitutes an undue burden on interstate commerce. Plaintiff contends that the instant case is analogous to or strongly parallels that of Transcontinental Gas Pipe Line Corp. v. Borough of Milltown, D.C.D.N.J.1950, 93 F.Supp. 287, where this court held that defendant Borough of Milltown's enforcement of its zoning ordinance, preventing plaintiff pipe line company from laying of a natural gas pipe line, constituted an undue burden on interstate commerce. I do not agree that the two cases are analogous. Although there are areas of similarity, the differences are decisive.

In Transcontinental Gas Pipe Line Corp. v. Borough of Milltown, supra, there was a company engaged in a proj-

such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same." 47 U.S. C.A. § 401(b).

ect of great magnitude—the construction of an 1800 mile, 30 inch gas pipe line running through 14 states, at a cost of approximately $240,000,000. While size of investment is not determinative, it is a factor to be weighed in terms of the nature of its contribution to and effect on interstate commerce. The degree of importance of the pipe line corporation to interstate commerce was reflected in its having been endowed with the power of eminent domain by provisions of the Natural Gas Act, 15 U.S.C.A. § 717f(h). Where so endowed, the courts have held that they will not interfere with the discretionary exercise of such right in the absence of fraud, bad faith, or gross abuse, and that considerable discretion and latitude are allowed within this frame of reference. Williams v. Transcontinental Gas Pipe Line Corp., D.C.W.D.So.Car.1950, 89 F.Supp. 485, 489; Martin v. Portland Pipe Line Co., 1 Cir., 1946, 158 F.2d 848, 850.

Furthermore, the pipe line was being constructed two and a half feet underground; was neither dangerous nor aesthetically distasteful; and with one exception (in which it obtained permission of the owner) was laying its pipe line within the right of way of the Public Service Electric and Gas Company of New Jersey, with the latter's consent. And of no little importance was the fact that passage through Milltown was a necessary link in an already constructed chain which had practically reached the southern approaches to the municipality, and the enforcement of the zoning ordinance against the pipe line company was impeding its further progress.

Plaintiff, on the other hand, has an authorization for the purpose of conducting radio tests—a situation in no sense approximating the degree of utility or urgency involved in the pipe line case. Nor is plaintiff engaged in an extension of an already established or even prospective communications "chain", within the above-described context. Nor is his contemplated use of the land "invisible"—as is the case of the "buried" pipe line; quite to the contrary, in fact,

he intends to erect a mast 75 feet above the ground.

Although the acquisition of land is not in issue here (since plaintiff already owns the land in question), it is important to note that plaintiff has not been endowed with the power of eminent domain, and its concomitant power to use the acquired land with broad discretion. The really relevant point, however, is not ownership or acquisition of land, but the use to which such land is to be put; and the question of whether the interference with such use constitutes an undue burden on interstate commerce basically hinges on the individual facts of the case.

It follows from this discussion, of course, that the holding in the Transcontinental case is not dispositive of the issues in the present case.

The Supreme Court of the United States early discussed the relative interplay of local and federal power in the area of interstate commerce. In Sherlock v. Alling, 1876, 93 U.S. 99, 103, 23 L.Ed. 819, the Court stated:

"In conferring upon Congress the regulation of commerce, it was never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution."

In Kelly v. State of Washington ex rel. Foss Co., 1937, 302 U.S. 1, 10, 58 S.Ct. 87, 92, 82 L.Ed. 3, the Court reaffirmed this principle in stating that it

" * * * is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so 'direct and positive' that the two acts can-

not 'be reconciled or consistently stand together'."

In the absence of actual or implied regulations to the contrary, the Federal Communications Act does not preclude states from the exercise of their police powers in the use of land and buildings. Plaintiff contends that National Broadcasting Co. v. Board of Public Utility Commissioners of New Jersey, D.C.D.N.J.1938, 25 F.Supp. 761, has applicability to this case. There, a New Jersey statute, N.J.R.S. 48:11–1, N.J.S. A. required the securing of a certificate of public convenience and necessity from the Board of Public Utility Commissioners before constructing or operating a radio broadcasting station or transmitter. This court found that the Federal Communications Act of 1934 had vested power in the Federal Communications Commission to issue licenses for such purposes, and that the state law was invading a field specifically pre-empted by the federal government. The local statute had given to a state board power already delegated by Congress to the Federal Communications Commission, namely, power to regulate interstate radio broadcasting. The doctrine of federal supremacy was subjected to a clearcut test, and the court properly reasserted this doctrine in finding the contested provisions of the New Jersey statute in conflict with federal law. As the United States Supreme Court stated in Houston E. & W. Texas Ry. Co. v. United States, 1914, 234 U.S. 342, 350, 34 S.Ct. 833, 836, 58 L.Ed. 1341:

"It is of the essence of this [complete and paramount] power [confided to Congress to regulate commerce] that, where it exists, it dominates."

It should be clearly noted, however, that the conflict was in the regulation of interstate radio broadcasting—and not in regulating the use of land and buildings.

In Ziffrin, Inc., v. Martin, D.C.E.D.Ky. 1938, 24 F.Supp. 924, 928, affirmed Ziffrin, Inc., v. Reeves, 1939, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed 128, it was held that:

"The expressly granted power of the federal government to regulate interstate commerce and the power of the individual states to enact regulations for their internal police are co-ordinate powers which each must respect. * * *

" * * * State laws, not primarily aimed at commerce, but intended as legitimate exertions of the authority of the state to provide for the public safety, health and morals of the citizens of that state are not invalid because they may remotely or incidently impose restrictions on interstate commerce."

And, again, 24 F.Supp. on page 929, the Court went on to say:

" * * * there are certain classes of state legislation which, although they may incidently or remotely affect interstate commerce, are not intended as regulations thereof, but have their primary concern for the public health, safety, and welfare of the citizens of the particular state and which are properly in the nature of police regulations. If these laws are reasonable and bona fide and there is no Act of Congress expressly covering the same ground, they are valid."

In this era of rapid technological and scientific advance, it is inevitable that there will be occasional areas of friction where personal interest will collide with public interest. Where the legislative intent is not to interfere with the orderly processes of commerce and does not in operation do so, the court will not permit the Commerce Clause of the Constitution to be used as an escape hatch.

The evidence taken in this case, to which reference will be made later, disclosed no unreasonable exercise by the defendant municipality or its organs in attempting to appropriately plan for its future communal growth. Indeed, the action under discussion appears to be

well within the police power of the municipality. Vis à vis the temporary permit plaintiff holds from the Federal Communications Commission, the zoning ordinance cannot conceivably be said to constitute such a burden on interstate commerce as to warrant the court's striking it down.[2]

## IV.

Plaintiff suggests that he is a public utility[3] and therefore exempt from the operation of the zoning ordinance of the Township of Greenbrook, under its very terms, coming, as he claims, within Section 6, paragraph 9 thereof, as follows:

"Section Six.

"Use Regulations Controlling Residence Zone.

"In a residence zone, as indicated on the Building Zone Map, no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used, except for one or more of the following uses:"

\*　\*　\*　\*　\*

"9. Buildings housing public utilities, provided said buildings conform in general architecture to the buildings surrounding same and further provided that all of the provisions relative to height, setback, front, rear and side yards shall be complied with as herein set forth. \* \* \*"

Obviously, in his application for the construction of a 75 foot mast and a small housing at the foot of it he is not within the contemplation of the above exemption, if, indeed, he is a public utility, and is left to his other objections to the ordinance, if he is to be free from its provisions.

## V.

Lastly, plaintiff claims that the zoning ordinance is unreasonable and arbitrary, and that its effect is to deprive him of his property without due process of law, and to deny him the equal protection of the laws as guaranteed under the Fourteenth Amendment. Procedurally, the Township of Greenbrook complied with and acted under constitutional and legislative authorization.

Article 4, section 6, paragraph 2 of the 1947 New Jersey Constitution empowers the legislature to enact laws authorizing municipalities to zone; and the zoning ordinance enacted by the Township of Greenbrook is authorized by N.J.S.A. 40:55–30, 32.

Judicial treatment of zoning ordinances has come full cycle, and in recent years the courts have recognized the need for comprehensive municipal planning. In fact, the New Jersey Constitution, in Article 4, section 7, paragraph 11, specifically provides for liberal construction of constitutional and statutory

---

2. Some indication that the Federal Communications Commission would itself concur in this holding may be gleaned from a letter forwarded by its secretary to counsel for the municipality in reply to an inquiry addressed by him to it calling for an interpretation of the status of the plaintiff. In its reply (Defendants' Exhibit 1 in evidence), it said:
 "In no event, however, does this Commission, in granting a radio license (which includes approval of the site selected for the station facilities) encroach upon the jurisdiction of any local governmental authority with respect to the latter's power to zone, or otherwise regulate the uses to be made of the real estate involved. Thus, your zoning authority is entirely free, so far as this agency is concerned, to determine whether and under what conditions, it will permit a licensee to utilize any proposed station site. However, in making your determination, you may wish to consider the need for any waiver or change in the applicable zoning restrictions in the light of the status of the licensee and his relationship to other public needs or benefits."

3. Public utilities may be exempt from zoning regulations under New Jersey law as provided in N.J.S.A. 40:55–50 under circumstances of hearing and decision by the Public Utilities Commission of New Jersey. Application of Hackensack Water Co., 1956, 41 N.J.Super. 408, 125 A. 2d 281. Plaintiff Kroeger, in the instant case, never submitted any application to that body for its action.

provisions concerning municipal corporations formed for local government.

The landmark case involving the constitutionality of a zoning ordinance is probably that of Village of Euclid, Ohio v. Ambler Realty Co., 1926, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed 303, where the Court stated that

"it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

And 272 U.S. on page 388, 47 S.Ct. on page 118, the Court maintained that

"If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control."

The plaintiff's assertion that the lot of land he purchased is a virtually inaccessible peak area, totally unfit for residential purposes itself or in its immediate vicinity, was sharply contested by the defendants. His proofs that this spot and this alone would meet the conditions of height to make possible the continuance and expansion of his business were not convincing. Indeed, the very permit of the Federal Communications Commission, so heavily relied upon by him as an order, carries with it the implication of uncertainty that there will be a permanent grant of federal authority to him. Plaintiff's lot, though irregular and difficult of approach now, could be made the site of a substantial residence present an owner possessing the desire for it and the money required to be expended upon it. Homes are located in the relatively close vicinity of the lot.

There is an initial presumption of the validity of a zoning ordinance, Brandon v. Board of Com'rs of Town of Montclair, 1940, 124 N.J.L. 135, 149, 11 A.2d 304, affirmed, 1940, 125 N.J.L. 367, 15 A.2d 598, which can be controverted by sufficient evidence to the contrary. No such sufficiency of evidence to the contrary has been presented. On the other hand, there was evidence, as has been previously intimated, that the municipality had attempted to plan for its future growth according to modern expert teaching. Surveys had been made of the then present uses to which property in the municipality and its contiguous territory was being put and projections on as scientific a basis as possible were made as to the most advantageous division of the areas for future growth having in mind the common good of the entire community.

■ In the absence of a showing that a zoning ordinance is clearly arbitrary and unreasonable, and in contravention of the due process and equal protection clauses of the United States Constitution, there is a growing and justified reluctance by the courts to substitute their judgment for that of the legislative body of the municipality. Standard Oil Co. v. City of Tallahassee, Fla., D.C.N.D.Fla. 1949, 87 F.Supp. 145, affirmed, 5 Cir., 1950, 183 F.2d 410; Downham v. City Council of Alexandria, D.C.E.D.Va.1932, 58 F.2d 784, 788.

In Ward v. Scott, 1954, 16 N.J. 16, 22, 105 A.2d 851, 855, the New Jersey Supreme Court refers to a number of cases [4] as indicative of the recent trend of the courts to hold

" * * * that municipal governing bodies may exercise broad powers in their zoning regulation of land and structures * * * [and] are in furtherance of constitutional and statutory objectives and the public welfare generally."

■ Where possible, in the interests of comity, this court will not contradict state policy.

4. Fischer v. Township of Bedminster, 1952, 11 N.J. 194, 201, 93 A.2d 378; Lionshead Lake, Inc., v. Township of Wayne, 1952, 10 N.J. 165, 89 A.2d 693;

Duffcon Concrete Products v. Borough of Cresskill, 1949, 1 N.J. 509, 64 A.2d 347, 9 A.L.R.2d 678.

Plaintiff refers to Hasbrouck Heights Hospital Ass'n v. Borough of Hasbrouck Heights, 1953, 27 N.J.Super. 476, 99 A. 2d 591, reversed on other grounds in 1954, 15 N.J. 447, 105 A.2d 521 and Collins v. Board of Adjustment of Margate City, 1949, 3 N.J. 200, 69 A.2d 708, as supporting his case, but the language of those decisions leads to inferences otherwise. In fact, the court in the Hasbrouck Heights case, supra, 27 N.J. Super. at page 480, 99 A.2d at page 593 quotes from Monmouth Lumber Co. v. Ocean Township, 1952, 9 N.J. 64, 74, 87 A.2d 9,[5] the following:

> " ' * * * an exercise of the police power by a legislative body is not rendered unconstitutional merely by the fact that its enforcement works curtailment of private activity, even to the point of prohibition thereof.' "

It might not be amiss, at this juncture, to emphasize that this court is not discussing whether the zoning ordinance might, in effect, create an undue hardship on plaintiff's use of his property, but only whether the ordinance, in its general terms and general application, is unconstitutional. As stated by the New Jersey Supreme Court in Fischer v. Township of Bedminster, 1952, 11 N.J. 194, 206, 93 A.2d 378, 384:

> " * * * the validity of a zoning ordinance is not to be determined by reference to a single individual property. If the plaintiff is dissatisfied with the application of the zoning laws to his particular property, he may apply to the board of adjustment for a variance * * * ."

 This, of course, is an administrative remedy, which plaintiff here was not seeking—and so is not inconsistent with the prior conclusion that plaintiff was not barred from this suit by failure to exhaust administrative remedies. The zoning ordinance would be void, of course, if the township had failed to provide for a board of adjustment as required by N.J.S.A. 40:55-36, but no such infirmity here exists. See Somers v. Borough of Bradley Beach, Ct.Err. & App.1935, 115 N.J.L. 135, 178 A. 755.

The plaintiff must therefore be denied the relief he seeks and judgment must be entered in favor of the defendants.

This opinion shall constitute findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C. and an order in conformity herewith shall be settled on the next motion day, January 7, 1957, unless sooner submitted by consent as to form reserving objections for appeal.

---

5. The court in the Monmouth Company case, in turn, quoted from Collins v. Board of Adjustment of Margate City, 1949, 3 N.J. 200, 206, 69 A.2d 708.