**NEW YORK STATE NATURAL GAS
CORPORATION, Plaintiff,**

v.

**TOWN OF ELMA, Defendant.**

**Civ. No. 8088.**

United States District Court
W. D. New York.

March 21, 1960.

Kenefick, Letchworth, Baldy, Phillips & Emblidge, Buffalo, N. Y. (Robert M. Hitchcock, Buffalo, N. Y., of counsel), for plaintiff.

Blair, White & Martin, Buffalo, N. Y. (George R. Blair, Buffalo, N. Y., of counsel), for defendant.

HENDERSON, District Judge.

Plaintiff seeks an injunction directing defendant municipality to reinstate a zoning permit issued to plaintiff on August 14, 1958, for the construction of a measuring and regulating station in conjunction with a gas pipe line, or to issue a new permit in like form, or alternatively restraining defendant, its agents, servants and attorneys from interfering with or placing any restraints on plaintiff's installations and operations under the zoning ordinance of the defendant so as to prevent, restrain, or delay plaintiff in supplying natural gas to its customer.

### Findings of Fact.

From the admitted allegations in the complaint, concessions of counsel at the pretrial conference and the final hearing in this case, I find the following facts:

1. Plaintiff is a New York corporation.

2. Defendant is a municipal corporation organized under the laws of New York.

3. The action arises under the Constitution of the United States, Article I, Section 8, Clause 3, and the Natural Gas Act, Title 15 U.S.C.A. § 717 et seq.

4. Plaintiff is a Natural Gas Company within the meaning of that term as used in the Natural Gas Act, and is engaged in the transportation and sale of natural gas in interstate commerce for resale and is endowed with the power of eminent domain pursuant to the provisions of said Natural Gas Act.

5. Plaintiff entered into contracts with the Iroquois Gas Corporation, calling for the construction of a 29.5 mile 20 inch high pressure transmission line and facilities therefor at a cost in excess of $1,600,000 to deliver natural gas to said Iroquois Gas Corporation in specified quantities to a point on the Iroquois Gas Corporation distribution system near Porterville, Erie County, New York.

6. For the purpose of carrying out these agreements, plaintiff applied to the Federal Power Commission for a Certificate of Public Convenience and Necessity pursuant to Section 7 of the Natural Gas Act, calling for the pipe line construction, together with a measuring and regulating station at the Porterville connection which would cost $60,000.

7. On August 12, 1958, the Federal Power Commission in Docket No. G–14956 issued a temporary Certificate of

Public Convenience and Necessity to plaintiff pursuant to Section 7(c) of the Natural Gas Act [15 U.S.C.A. § 717f (c)], to construct and operate the transmission line and facilities proposed in its application for a Certificate of Public Convenience and Necessity above referred to.

8. The 29.5 mile pipe line connection between the plaintiff and the Iroquois Gas Company forms a part of an interstate distribution system entering the State of New York from points outside the State of New York.

9. The said pipe line system is intended for use and is presently used for the delivery of gas to the Iroquois Gas Corporation, which gas is and will be transported from points outside the State of New York to the Iroquois Gas Corporation distribution system near Porterville, Erie County, New York.

10. Plaintiff agreed with Iroquois Gas Corporation to start deliveries of gas through the 29.5 miles of 20-inch transmission line on October 1, 1958; the purpose of such delivery being to supply Iroquois Gas Corporation with gas for delivery to the latter's customers, including commercial and industrial customers, and including upwards of 220,000 space heating customers dependent upon Iroquois Gas Corporation for the heating of homes during the heating season, and including housing projects, schools, hospitals, churches, hotels, office buildings and other institutions.

11. In reliance upon the agreements with Iroquois and on the temporary authorization of the Federal Power Commission, plaintiff entered upon the performance of the agreements and secured rights-of-way by negotiation over the full 29.5 miles necessary for the laying of the line and purchased property adjacent to the Porterville station of the Iroquois Gas Corporation, consisting of slightly over two acres, upon which it proposed to bring out of the ground the 29.5 mile pipe line and install therein and thereon regulators and metering equipment, all of which work is substantially completed.

12. The Porterville Station of the Iroquois Gas Corporation is one of that corporation's pipe line discharging stations and a point at which gas is received from pipe line suppliers. Gas is taken out of storage, controlled and discharged to the markets at that point. Approximately 30% of the deliveries made by Iroquois Gas Corporation during the heating season in the years 1958–1959 were processed through that station.

13. The regulators and metering equipment upon the lot are an essential part of the 29.5 mile pipe line.

14. The purpose of the regulators is to control the pressure of natural gas from plaintiff's line into the lines and mains of Iroquois Gas Corporation immediately adjacent to the lot acquired by plaintiff.

15. The purpose of the metering equipment on the property is to measure the gas delivered to Iroquois at the point of delivery in order to ascertain the quantities actually delivered.

16. The Porterville Station of Iroquois Gas Corporation and the property of plaintiff adjacent thereto are situated in the defendant Town.

17. On or about August 1, 1958, plaintiff submitted an application to the defendant Town for a building permit for the construction of a building on its lot to house the regulators and metering installations above referred to.

18. The Town Board of the defendant Town approved the application at a regular meeting on August 13, 1958, without a public hearing and without due public notice.

19. Building Permit No. 1443 was issued by the defendant Town on August 14, 1958, permitting the construction in accordance with the building plan which had been provided the defendant by plaintiff.

20. Defendant has a Zoning Ordinance and Building Code, in which said Zoning Ordinance the plaintiff's lot is located within a "Residential C and Agricultural District."

21. The proposed building and use thereof were not within the permitted uses for a Residential C and Agricultural District as set forth in the said Zoning Ordinance.

22. The Zoning Ordinance and Building Code contemplate the issuance of a building permit after hearing before the Town Board. Town of Elma Building Code, Section IV–(1) [1954 Edition].

23. There is no power given to the Town Board to grant a permit for a non-complying use without a public hearing.

24. The Zoning Ordinance permits a zoning variance to be allowed by the Board of Zoning Appeals "after due notice and public hearing." Town of Elma Zoning Ordinance, Section VIII–J [1954 Edition].

25. Plaintiff was advised by written notice of the defendant, dated September 11, 1958, that the permit which had been issued was "revoked until further notice," and that a public hearing would be held on the matter on October 8, 1958.

26. Plaintiff discontinued all work promptly, pending the reissuance of the Building Permit which it expected to occur.

27. On November 12, 1958, defendant, at a meeting of its Town Board, approved a motion that the plaintiff's Application for Building Permit " * * * be tabled until the disposition of the complaint against the Iroquois Gas Corp. regarding the odor and noise at the Hemstreet Rd. building is rectified."

28. The "building" referred to in the motion quoted in paragraph 27 above is not the property of plaintiff, is not on plaintiff's said lot, but is on the property of Iroquois Gas Corporation adjacent to plaintiff's lot, and is owned by Iroquois Gas Corporation.

29. The only relationship between plaintiff and Iroquois Gas Corporation is that plaintiff delivers and sells natural gas in interstate commerce to Iroquois Gas Corporation.

30. Subsequent to the receipt of written notice of the motion of the Town Board of defendant Town of November 12, 1958, plaintiff resumed work on its said facilities and installation on its said lot and, pursuant to a temporary injunction of this court issued on January 7, 1959, has completed the same and is now engaged in the regular supply of gas to Iroquois through the use of the facilities in accordance with the contracts between the two companies.

31. Prior to the commencement of this action, on various occasions, defendant in writing and orally through its attorney notified workmen on said lot to discontinue their work or legal action both of a criminal and civil nature would be taken.

32. On November 26, 1958, defendant, with no notice to plaintiff, secured *ex parte* an order from the Supreme Court of the State of New York temporarily restraining defendant from further installations and construction on its premises, from selling and delivering any natural gas to Iroquois Gas Corporation from its Town of Elma facilities, and from operating said facilities and premises.

33. On December 1, 1958, plaintiff obtained an order from the Supreme Court of the State of New York vacating the said order of November 26, 1958.

34. Defendant, through its officials, has threatened to institute legal proceedings to compel plaintiff to remove its said installations located in defendant Town; to prevent plaintiff from fulfilling its aforesaid contracts with Iroquois Gas Corporation authorized as aforesaid by the Federal Power Commission; to force plaintiff under the claim that defendant's Zoning Ordinance and Building Code are being violated to terminate all work in the Town of Elma in furtherance of its obligations under said contracts; to bring criminal proceedings against plaintiff and its employees; and to institute actions for penalties against plaintiff. In addition, as stipulated by counsel at pretrial conference, it appears that the defendant has threatened to so harass, delay, annoy and inconvenience plaintiff and its employees that the performance

of said contracts will be prevented or delayed for a long period of time.

35. The Federal Power Commission issued a final order issuing a Certificate of Public Convenience and Necessity on June 29, 1959, replacing the temporary certificate referred to in paragraph 7 above.

36. The performance of the contracts between Iroquois Gas Corporation and plaintiff has made possible a substantial increase in supply of gas to Iroquois Gas Corporation's customers in western New York.

37. There had been a need for increased gas supply prior to the contracts between plaintiff and Iroquois Gas Corporation due to increased public demand and prospective future requirements.

38. The gas distributed through the Porterville Station of Iroquois Gas Corporation, adjacent to the lot of plaintiff in the Town of Elma under discussion, was and is partially consumed in the areas immediately surrounding the Porterville Station, the Town of Elma and neighboring areas, in addition to more remote localities.

39. There is no unduly dangerous or unpleasant condition inherent in the plaintiff's facilities immediately adjacent to the Iroquois Gas Corporation's station which is detrimental to local health, safety and welfare.

40. It is reasonably necessary that the metering and regulatory equipment which the plaintiff has erected and maintains on the premises involved be located at that site in order for the plaintiff to render adequate service.

## Discussion.

### I.

Defendant argues that this action is premature because plaintiff has not exhausted his administrative remedies. Natural Gas Pipeline Company of America v. Slattery, 1937, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276. However, it is clear that the plaintiff had no administrative recourse available to him. The defendant's Building Code permits appeal to the Zoning Board of Appeals when application for a Building Permit is denied for any reason. Here, the application was neither denied nor granted, but merely tabled by the Town Board until the occurrence of an event not certain to occur, i. e., the settlement of a dispute (not involving the plaintiff's operation at all) between the defendant Town and Iroquois Gas Company. Moreover, plaintiff seeks not a variance—which the Zoning Board of Appeals could grant—but an adjudication that the Zoning Ordinance and Building Code is unconstitutional insofar as it purports to restrict plaintiff's rights to install its facilities on the lot adjacent to the Iroquois Station. There is no power in the Zoning Board of Appeals to hold the Ordinance, by which it is established, unconstitutional. Thus, plaintiff is correctly before the court at this time. Baddour v. City of Long Beach, 1938, 279 N.Y. 167, 177, 18 N.E.2d 18, 22, 124 A.L.R. 1003, appeal dismissed 1939, 308 U.S. 503, 60 S.Ct. 77, 84 L.Ed. 431; Consolidated Edison Co. of New York v. Village of Briarcliff Manor, 1955, 208 Misc. 295, 299, 144 N.Y.S.2d 379, 383. Compare Kroeger v. Stahl, D.C.D.N.J.1957, 148 F.Supp. 403, affirmed 3 Cir., 1957, 248 F.2d 121.

### II.

The question is squarely presented whether defendant's Zoning Ordinance and Building Code, as applied here, constitute an undue burden on interstate commerce in violation of Article I, Section 8, Clause 3 of the United States Constitution.

While local power to enact zoning ordinances under the state's police power is well established (see Village of Euclid, Ohio v. Ambler Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303), the state may not exercise otherwise valid police power where the necessary effect will be to place a substantial burden on interstate commerce. Southern Pacific Co. v. State of Arizona, 1945, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915.

That Congress has viewed the subject of interstate transmission of natural gas as of substantial national importance is attested by its grant of the power of eminent domain to companies constructing lines and facilities pursuant to a Certificate of Public Convenience and Necessity issued by the Federal Power Commission. Natural Gas Act, 15 U.S.C.A. § 717f(h).

■ It seems clear that the defendant Town could not have prevented the connection of the pipe with Iroquois' receiving facilities under the Federal Power Commission authorization. State of Oklahoma v. Kansas Natural Gas Co., 1911, 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716; Haskell v. Cowham, 8 Cir., 1911, 187 F. 403; Transcontinental Gas Pipe Line Corp. v. Borough of Milltown, D.C.D.N.J. 1950, 93 F.Supp. 287. A much closer question is presented in the case at bar, however. Here there is no effort to restrict the construction of the pipe line itself, as there was in the Transcontinental case. Rather, through the exercise of an accepted local power, the defendant seeks to restrict the construction of equipment, together with its housing, which is merely ancillary to the pipe line and which is located above ground in a zone where such construction is not permitted by the local zoning ordinance. Nevertheless, on the particular facts presented, the court is of the opinion that a sufficient showing has been made to warrant the conclusion that the Zoning Ordinance and Building Code of defendant Town, as applied to the proposed construction as constituted on this record, are unconstitutional as an undue burden upon interstate commerce.

■■ There is an indisputable local interest in controlling the environmental development of the community which is almost universally expressed in the power of local municipalities to enact zoning ordinances. It does not appear to have been the intention of Congress in enacting the Natural Gas Act to exempt gas suppliers from complying with such local zoning ordinances. Nor does the Commerce Clause of the Constitution operate to exempt interstate commerce from reasonable local zoning regulation. Only if it is established that a particular site is reasonably necessary for the proposed construction of equipment and buildings ancillary to an interstate pipe system should a local zoning ordinance forbidding such construction on that particular site be struck down. Such factors as the availability of alternative sites, the degree of harm on the local area which would result from the construction, and the comparative advantages of various sites in terms of efficiency and safety of operation bear on the question of *reasonable necessity*. Cf. Niagara Mohawk Power Corp. v. City of Fulton, 4th Dep't. 1959, 8 A.D.2d 523, 188 N.Y.S.2d 717.

The nature and purpose of the metering and regulating equipment involved in this controversy necessarily restrict its location to some point along the pipe line. The plaintiff has presented evidence that the location of the equipment at the terminus of the line, rather than at some point short of the terminus, is in keeping with sound engineering practice and is reasonably necessary to accomplish the purposes required. The defendant, on the other hand, has shown no inherent danger to the health, safety or well-being of the community, or even unsightliness, from the installations. Nor has the defendant introduced any evidence contradicting plaintiff's proof that the location of the equipment at the terminus is in keeping with sound engineering practice and reasonably necessary. That the plaintiff's installations in this case will not impose undue detriment to the neighborhood is supported by the fact that they are to be located immediately adjacent to an already existing non-conforming use engaged to a substantial degree in the same type of activity.

It is noteworthy that the objectionable conditions which existed at the Iroquois Station, plaintiff's customer, have been abated since this action was commenced. The defense has not urged that any such objectionable conditions are associated with or likely to arise at the installa-

tion of the plaintiff. If they do, appropriate local action could presumably be taken to require their abatement also.

The police power of the states, here asserted through the defendant's Zoning Ordinance and Building Code, does not include the power to absolutely prevent the construction of necessary equipment at the point of delivery in conjunction with a federally authorized pipe line connection with a gas retailing customer which is itself an already existing nonconforming use in the area, at least where, as here, there is reasonable necessity for the location of the equipment on the site involved and there is no substantial danger to local health, safety or welfare shown by the local municipality.

It should be reiterated, however, that this decision is rendered solely on the particular facts now before the court. It does not foreclose reasonable future regulation of the site involved through the defendant's Zoning Ordinance and Building Code, or otherwise. All that is here decided is that the local ordinances, as heretofore applied to the particular construction proposed, constitute an undue burden upon interstate commerce. Their application to proposed expansion or other alteration of existing facilities will present new issues very possibly leading to different conclusions.

### Conclusions of Law.

1. That the provisions of the Zoning Ordinance and Building Code of defendant Town, as construed by defendant so as to prevent plaintiff from installing, completing and operating its said installations under the particular circumstances of this case, have no foundation or justification in the protection of health, safety or welfare of the defendant Town or its citizens and are an unreasonable and undue burden on interstate commerce and, therefore,

2. The defendant, its agents, servants and attorneys are hereby enjoined and restrained from interfering with or placing any restraint on plaintiff's said installations and operations on its said property in the Town of Elma so as to prevent, restrain or delay plaintiff in supplying natural gas to Iroquois Gas Corporation in the performance of the plaintiff's contracts as authorized by the Federal Power Commission.

No costs to either party.

So ordered.