MARIAN COLLINS AND JOHN F. WYLIE, PLAINTIFFS-APPELLANTS, v. THE BOARD OF ADJUSTMENT OF MARGATE CITY AND R. BAYNE WILLIAMS, BUILDING INSPECTOR, DEFENDANTS-RESPONDENTS.

Argued October 31, 1949—Decided December 5, 1949.

202

*Mr. William Charlton* argued the cause for appellants.

*Mr. Enoch A. Higbee, Jr.,* argued the cause for respondents.

The opinion of the court was delivered by

HEHER, J. The question here is the legal sufficiency of the provision of the local zoning ordinance limiting the use of each lot in a Residence "A" zone to a single dwelling house for one family and one accessory building for service as a garage, playhouse or greenhouse, but barred as a residence to all except "domestic employees of the tenant or of the owner of the premises." The issue was raised by a complaint

for relief in lieu of *certiorari* pursuant to Article VI, section V, paragraph 4 of the Constitution of 1947 and *Rule* 3:81–1 *et seq.,* of this court. The regulation was sustained by Judge Lloyd in the Superior Court; and the landowner and her tenant appealed to the Appellate Division of that court. The case is here on certification for appeal by this court, acting *ex mero motu* in accordance with Article VI, section V, paragraph 1 (d) of the Constitution of 1947 and *Rule* 1:5–1 (a) of this court.

The zoning ordinance was adopted September 18, 1930. It defines "lot" as "a parcel of land, the location, dimensions and boundaries of which are determined by the latest official record;" and an "accessory building" as one "which is subordinate and accessory to a main building on the same lot," limited to the uses indicated. It provides, *inter alia,* that no accessory building in any zone shall be more than two stories in height, and no building of this class less than two stories in height "shall be used for residence purposes," and then only by the domestic servants of the tenant or owner.

The Wylies, husband and wife, either severally or jointly, had title to Lots Nos. 43, 44 and 45 in Block 207-A on the Tax Assessment Map of Margate City. These lots were formerly known as Lots Nos. 43, 44 and 45 in Block 206 on a Map of Winchester Gardens, No. 2, prepared by the owners of a tract of which they were a part, and approved by the local governing body. They are situate in a Residence "A" zone delineated by the ordinance. In 1938, Lorna Wylie, the wife of John F., erected a dwelling house on the forepart of Lot 44, and in the rear a two-story garage with dwelling quarters on the second floor. In dimension, Lot 44 as outlined on these maps was roughly 35 x 105 feet. On May 14, 1947, Wylie and his spouse conveyed to plaintiff Collins the rear 30 feet of Lot 44 and all of Lot 43, excepting a five-foot strip on the northerly side for a distance of 72 feet westerly from Exeter Avenue. As a result, so it is said by appellants, "a part of Lot 43 was given to Lot 44," and the rear 30 feet of Lot 44 "was given to Lot 43;" Lot 44 "was left with only one building upon it," the dwelling house, and Lot 43 "had

given to it the former garage building," and so Lots 43 and 44 each "thereafter contained only one building." On May 1, 1948, the plaintiff Collins leased to Lorna Wylie "the unfurnished apartment" in the garage building for the summer months of that year, and the Wylies entered into possession. John F. Wylie had rented the main dwelling house on Lot 44 to one Siever. The Wylies were not his domestic servants, but rather his landlords; and the local building inspector, in that capacity and as "enforcement agent" under the zoning ordinance, served on each plaintiff a "notice" of the "violation" of the ordinance, in that the accessory building was occupied by persons not the domestic servants of the occupant of the principal building. Thereupon there was an "appeal" to the board of adjustment; and the adverse action of that tribunal is the subject of the complaint interposed by the landowners and the tenant. The notices were not included in the appendix.

We pass the question of whether the "action" thus taken by the building inspector is reviewable by a proceeding in lieu of *certiorari*. The point is not made, and there is no occasion to consider it.

First, it is said that the common-law *jus disponendi* of the whole or a part of one's lands, declared by *R. S.* 46:3–5, has not so far been modified by *R. S.* 40:55–30 and 40:55–32 as to bar a "subdivision of lots" in the exercise of the zoning power conferred by those provisions; and that, at all events, the particular ordinance does not limit this "fundamental right of subdivision." Indeed, it is suggested that the right of alienation cannot be fettered by zoning regulations; and, moreover, it is denied that there has been such a grant of authority by the Legislature to the municipalities.

The use of lands and, by the same token, the *jus disponendi* are subordinate to the police power; and zoning is comprehended in the police power exerted by the amendment of October 18, 1927, to the State Constitution of 1844 (*P. L.* 1928, *p.* 820) and Article IV, section VI, paragraph 2 of the Constitution of 1947. The essence of zoning is territorial division according to the character of the lands and

structures and their peculiar suitability for particular uses, among other considerations, and uniformity of use within the division. Reasonable use restrictions in the exercise of the police power pursuant to the Constitution do not constitute the taking of the property for public use within the intendment of the constitutional mandate for compensation in such cases. All property is held in subordination to the police power; and the correlative restrictions upon individual rights—either of person or of property—are incidents of the social order, deemed a negligible loss compared with the resultant advantages to the community as a whole, if not, indeed, fully recompensed by the common benefits. There is a basic distinction between reasonable control of property for the public good and a "taking" of the property for public use. The touchstone of the reasonableness of the control is to be found in the relation of the regulation to the health, safety, morals, or the general welfare of the community. If there be a want of rational relation between the use restriction and one or more of the considerations within this general category, the regulation must be struck down as arbitrary and an invasion of the constitutional right of private property. Excesses in serving the public end in view are inadmissible. *Mansfield & Swett, Inc., v. West Orange,* 120 *N. J. L.* 145 (*Sup. Ct.* 1938); *Brandon v. Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940); affirmed, 125 *N. J. L.* 367 (*E. & A.* 1940); *Potts v. Board of Adjustment of Princeton,* 133 *N. J. L.* 230 (*Sup. Ct.* 1945); *Piaget-Del Corp. v. Kulik,* 133 *N. J. L.* 485 (*Sup. Ct.* 1945); *Visco v. Plainfield,* 136 *N. J. L.* 659 (*Sup. Ct.* 1948); *Oliva v. City of Garfield,* 1 *N. J.* 184, 189 (1948); *Euclid v. Ambler Really Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 71 *L. Ed.* 303 (1926). Thus, the proprietary rights of the landowner here are subject to the exercise of the police power comprehended in *R. S.* 40:55–30 and 40:55–32; and the right of alienation and subdivision of the lands for sale or use are *ex necessitate* conditioned by those provisions.

But the ordinance, section 4 (i), provides that "two or more lots or parts of lots may be thrown together and after

being recorded as required by law may be considered as one lot for the purposes of this Ordinance, provided that where this condition exists, or may hereafter exist, which gives the property two or more street frontages or boundaries, no such street frontage or boundary shall be deemed a rear property line;" and this is read as declaring a policy that "lots could be sub-divided if joined with other lots or parts of lots," and so the conveyance from the Wylies to Collins was made free of the use restriction enforced by the judgment of the Board of Adjustment. We take a different view.

██ ██ The provision obviously has reference to a subdivision of lots in keeping with the use restrictions of the ordinance, and not to a separation of a dwelling house and an accessory building situate upon a single lot in a Residence "A" zone in conformity with the regulation. What is sought here is the release of the accessory building from the use limitations affixed to it as such by the ordinance, and thereby to invest it with the like residence status as the principal dwelling, for the realization of the summer residential rental value, and thus to defeat the regulation governing land uses in Residence "A" districts. It goes without saying that this is an inadmissible procedure, for it would set at naught the provision of the ordinance for Residence "A" districts. It would put it within the power of the individual landowner to avoid the restriction by a subdivision of his lot. The partition of the lot by the cited conveyance can have no such consequence; the conveyance was made subject to the regulations of the ordinance. It is fundamental that conveyances of land are conditioned by all regulations made in the reasonable exercise of the zoning authority.

This interpretation is fortified by the prior provision of the cited section 4 (i) that "No space which for the purpose of one building has been counted or calculated as part of a side yard, rear yard, front yard, court or other open space required by this Ordinance may, by reason of change in ownership or otherwise, be counted or calculated to satisfy or comply with a yard, court or open space requirement of or for any other building;" and by the provision of subdivision

(j) of the same section that "On no existing lot upon which there has been erected a building used for residence purposes shall there be erected another building other than accessory building except under the authority of the Board of Adjustment and subject to such regulations as that Board may prescribe, provided that such regulations shall not be inconsistent with the provisions of this Ordinance."

We are not called upon to consider the effect of the provision of the ordinance that "the location, dimensions and boundaries" of a lot "are determined by the latest official record." The question has not been mooted, either here or in the Superior Court; so far as appears, it is academic as respects the particular district. The appendix does not set forth the ordinance in full or the zoning map.

 Secondly, it is urged that section 4:H–2 of the ordinance barring the use of the accessory building for residence purposes by all except the domestic employees of the tenant or owner of the premises is arbitrary and unreasonable and without substantial relation to any of the considerations enumerated in *R. S.* 40:55–30 and 40:55–32. This point, too, is without substance.

 The zoning of districts for single family dwellings is a valid exercise of the police power, if in the particular circumstances the local legislative authority takes into account the purposes to be served by zoning and the regulation is not arbitrary or unreasonable. Use zoning for single family dwellings serves the general prosperity and welfare. *Appley v. Bernards Township*, 128 *N. J. L.* 195 (*Sup. Ct.* 1942); *Potts v. Board of Adjustment of Princeton, supra; Euclid v. Ambler Realty Co., supra; Locatelli v. City of Medford*, 287 *Mass.* 560, 192 *N. E.* 57 (1934); *certiorari* denied, 294 *U. S.* 727, 55 *S. Ct.* 636, 79 *L. Ed.* 1257 (1935); *Foster v. Beverly*, 315 *Mass.* 567, 53 *N. E.* 2d 693, 151 *A. L. R.* 737 (1944); *Village of Western Springs v. Bernhagen*, 326 *Ill.* 100, 156 *N. E.* 753 (1927); *Hall v. Leonard*, 23 *N. Y. Supp.* 2d 360 (1940); affirmed, 285 *N. Y.* 719, 34 *N. E.* 2d 893 (1941); *Anne Arundel County v. Ward*, 186 *Md.* 330, 46

*A. 2d* 684, 165 *A. L. R.* 816 (1946) ; *Baddour v. Long Beach,* 279 *N. Y.* 167, 18 *N. E.* 2d 18, 124 *A. L. R.* 1003 (1938) ; appeal dismissed, 308 *U. S.* 503, 60 *S. Ct.* 77, 84 *L. Ed.* 431 (1939).

█ A high class residence district is as essential to the local economy as multi-family and apartment house areas. Each has its place in a well-rounded municipal development; each has its part in a comprehensive plan for the utilization of local facilities for the common welfare. The devotion of lands to their highest and best uses, having in view the needs of all, is the principle of zoning as expounded in the statute. The complex problems of communal life and growth lay corresponding restraints upon the use of property; and, if the measures invoked are reasonably adapted to the need, there is not a taking of property in the constitutional sense. The common good is the justification for the exertion of the police power in this sphere of municipal action, extending as it does to all the great public needs. Such is the reason and spirit and quality of the constitutional declaration and the scheme of the enabling act. The grudging application of the police power in this field, and undue emphasis on the individual right of property, motivated the adoption of the constitutional amendment of 1927.

█ It is a corollary of the foregoing principle that provision may also be made for a use accessory or incidental to the principal dwelling. This limitation is of necessity a reasonable exercise of the power to restrict the use of the lot to a single family dwelling. A garage and a residence for the servants of the occupant of the main dwelling, singly or in combination, fall into this category. There is no suggestion that here the lot lines are arbitrary or unreasonable, or that the regulation itself is not in accordance with a comprehensive plan designed to serve the statutory considerations, or that it is discriminatory as respects lots of like kind in the same area, or in its operation on other landowners in the district.

Judgment affirmed.

█

210 

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.