45 N.J. Super. 13 (1957)
131 A.2d 535
HOWARD D. BOGERT, JOHN J. BOGERT AND M. CATHERINE DWYER, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF WASHINGTON, A MUNICIPAL CORPORATION EXERCISING ITS FACULTIES IN THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, PURSUANT TO THE AUTHORITY OF THAT STATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1957.
Decided April 8, 1957.
*14 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Samuel M. Lyon, Jr., argued the cause for plaintiffs-appellants (Messrs. Doughty and Dwyer, attorneys; Mr. Michael A. Dwyer, of counsel; Mr. John J. Bogert, on the brief).
Mr. Lloyd L. Schroeder argued the cause for defendant-respondent.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was brought in the Superior Court, Law Division, to set aside a supplement to the zoning ordinance of the Township of Washington. The supplement upgrades a certain area, including land of the plaintiffs, from an AA residential district to a newly-established AAA residential district. The action of the township was sustained by Judge Leyden, and plaintiffs appeal.
*15 Washington is a small community, zoned entirely for residential use, except for a tiny area at the center left for retail business. Plaintiffs' property consists of 18 acres of undeveloped land, the southerly three-fourths of Block 1202 (for all references to the area in question, see the very useful map inserted by Judge FRANCIS in his dissenting opinion). Under the supplemental ordinance, lots in the new AAA district are to have a minimum area and frontage of one acre and 150 feet respectively; whereas in the AA district the minimum area and frontage are a half acre and 100 feet.
A strange aspect to the case is, as indicated in plaintiffs' brief, that it "is not the profit motive," which induces them to maintain the action. In fact, they say they "actually have no quarrel with the creation of a one acre zone * * *," but are of the view that the township, as a matter of law, was obliged to take one of two courses: either Blocks 1203, 1204 and 1301-1303 should have been included in the one-acre zone (that is, the AAA district) along with the above-mentioned Block 1202; or Block 1202 should have been left with these five blocks in the half-acre zone, namely, the AA district. Which the township should have done, is to the plaintiffs a matter of indifference. Nevertheless, they claim to have been discriminated against; whether their grievance is of a financial sort or of some other nature, or whether it verges upon the theoretical, is all left to conjecture. However, the point is not raised, and we pass it by.
Plaintiffs make some note of the fact  not as a suspicious matter, but as indicative of a lack of study on the part of the township  that the five blocks above-mentioned were made a part of the AAA district under the supplemental ordinance as it was originally introduced; but that on the day it was introduced, the township committee, approving the subdivision of a lot in Block 1302 (one of these five blocks), authorized three lots to be created, each less than one acre. The fact is, of course, that under the ordinance as passed, this block was brought within the half-acre zone, and the initial inconsistencies were resolved. That seems *16 not to be a matter of major significance. Nor do we think that plaintiffs can make much of the fact that the new AAA zone comprises only 2% of the total area of the township. Spot-zoning cannot be reduced to a matter of mathematics. Further as to spot-zoning, see Gartland v. Maywood, 45 N.J. Super. 1 (App. Div. 1957).
We turn, then, from these rather minor matters to the major premise underlying plaintiffs' argument, namely, that the center of a certain street, Van Emburgh Avenue, running north and south, which slices off 112 acres on the north-western corner of the township, plainly constitutes a natural boundary for the AAA zone, if such a zone is to be set up. Upon this premise they rest their contention that any failure on the part of the township to give like treatment to all property located within this slice is unreasonable, arbitrary and capricious. The governing principles here have been stated many times, most recently by this Part of the Appellate Division in Gartland v. Maywood, supra. They need not be repeated. The question is simply whether the municipal action taken here is manifestly unreasonable.
The premise stated is one which is most difficult to sustain. Bassett, discussing the subject of boundaries for zoning districts, declares that ordinarily the boundary should run, not down the center of the street, but at a standard distance back from the street line. Bassett, Zoning 95 (1936). Yokley says that to constitute a street or avenue the boundary line will, unless great care is exercised, give the municipal attorney a "legalistic migraine." Yokley, Zoning Law and Practice § 58 (1953). See further, Appley v. Township Committee of Township of Bernards, Somerset County, 128 N.J.L. 195, 198 (Sup. Ct. 1942), affirmed 129 N.J.L. 73 (E. & A. 1942); Scarborough Apartments, Inc., v. City of Englewood, 9 N.J. 182, 188 (1952); and see also Conlon v. Board of Public Works of City of Paterson, 11 N.J. 363, 371 (1953), pointing out that "zoning one side of a street for purposes different from those prevailing on the other side is not per se illegal," though "doubtless better reasoned planning theories favor the same use zoning *17 on both sides of a street." As the cited cases indicate, it by no means follows that a court will interfere with a zoning amendment which fails to follow the "better reasoned planning theories" and lays the boundary line of a district along the center of a street; but here we are asked to set aside an ordinance, as arbitrary and capricious, because the township largely accepted the more approved theories and ran the boundary line along the rear of the properties (other than Block 1301, which we will deal with later) fronting on Van Emburgh Avenue.
A colloquy below between court and counsel illustrates the point sharply. Plaintiffs' counsel said he would not want to build a $60,000 home on a one-acre lot which backed up on a half-acre lot; but, he suggested, he would feel differently if the more modest place were across the street. But would he? Are we to say that there was a manifest abuse on the part of the township because it did not accept this dubious theory of the plaintiffs?
A further study of the matter only confirms the impression that the failure to place the boundary of the district along Van Emburgh Avenue was not manifestly unreasonable. The AAA district, including plaintiffs' property, abuts upon Hohokus. The adjoining lands of Hohokus may be said to be in a residential district of even a slightly higher class than Washington's AAA district; for lots in this part of Hohokus must, according to the zoning ordinance there, have a minimum area of one acre and a minimum frontage of 200 feet. (As may be gathered from the map referred to) plaintiffs' property, the southerly three-fourths of Block 1202, is landlocked except for a so-called right of way (owned in fee by them), 50 feet wide, running into Washington Avenue along the Hohokus line or not far from it, practically a projection of Wearimus Road. Washington Avenue, which runs east and west into the Borough of Hohokus  when it is taken with Wearimus Road to the north and this right of way to the south  draws the whole AAA district into the environment of Hohokus. The right of way was recently acquired by the plaintiffs along the *18 Hohokus line, apparently with the very purpose of bringing their property as close as possible to this environment. Moreover, as one of the plaintiffs indicated below, there is a chance that the land in Hohokus immediately contiguous to theirs may be developed, thus tying their property very directly into the Hohokus community with cross streets. In any event, plaintiffs' property is not located on Van Emburgh Avenue, nor is there a road from their property running directly to it.
Unlike plaintiffs' property, Blocks 1203, 1204 and 1301-1303 (the five blocks which plaintiffs claim should, as a matter of law, be treated in the same fashion as their property) all front on Van Emburgh Avenue or, as is the case with 1301, have access to it through adjoining property. Block 1301 has access to no other road. It is to be observed that there are no streets running from any of these five blocks directly to the Hohokus area. Of the houses in the five blocks, two are roughly valued by plaintiffs' expert witness at $24,000 to $31,000, and eight or ten, including the two in Black 1301, are valued at $16,000 to $23,000. We are left with the impression that these 10 to 12 houses, generally speaking, are more modest than the 13 in the AAA district and those which, it is expected, will be attracted to the undeveloped land in that district. We are not informed as to the character of Van Emburgh Avenue north of Washington Avenue, but we are informed that there is a very handsome home on Washington Avenue, which recently sold for $70,000 and which, with plaintiffs' very property, makes up Block 1202. Counsel also told the trial court, without objection, that another home in the AAA district is worth $75,000-$80,000, and there are apparently other somewhat expensive homes there. Nearly half of the land in Blocks 1101 and 1201 has already been developed, and its character has thus been somewhat formed. It is not without significance that 17 of the 25 lots which compose the above-mentioned five blocks as the blocks are now subdivided, are each less than one acre. On the other hand, a witness for the plaintiffs said that of the 23 properties *19 in the AAA district, 20 are over an acre and the remaining three nearly an acre (.88, .95, .96 of an acre). The nature of existing uses in a district and the marked tendencies therein should of course be reckoned with, when revising a zoning plan.
The plaintiffs' property is wooded and neither subdivided, nor in any way developed; and, as indicated at the argument, there is apparently no present prospect of development. It consists of a large hill, with a "plateau area" on top, the most prominent landmark in that part of the township. Defendant says that all the lands located in this district constitute ideal locations for valuable homes, on the lots provided for in the supplemental ordinance.
It certainly does not seem to have been clearly unreasonable for Washington to have failed to upgrade the more modest properties fronting on or having access to Van Emburgh Avenue  that is, the five blocks plaintiffs refer to; nor do we think it clearly unreasonable for it to have included plaintiffs' land in the AAA district. In our view, plaintiffs have failed to carry the burden of proof resting upon them. When an attack is made upon an amendment to a zoning ordinance involving questions as to local policy, the courts  merely because they have other preferences in the matter  are not at liberty to reject those of the chosen representatives of the municipality.
Affirmed.
FRANCIS, J.A.D. (dissenting).
On September 13, 1955 the governing body of the Township of Washington, by a supplement to its 1941 zoning ordinance, created an AAA residence district in the northwest corner of the municipality which upgraded the required lot size to one acre with a minimum frontage of 150 feet. Previously the area had been in a zone designated AA which called for one-half acre lots and a minimum frontage of 100 feet. Plaintiffs are owners of an undeveloped wooded tract of 17.94 acres encompassed by the supplement; it has been in their family for over 150 years. In this prerogative writ proceeding *20 they have attacked the supplement as unreasonable, arbitrary and discriminatory, and as an invalid exercise of the zoning power. The trial court found against them and we are asked to review that judgment.
Washington is a small residential community in Bergen County with a population of 3,569 persons. It is 3,200 ± acres in area and, except for a small square of a few blocks in the heart of the township which is set apart for retail business, it is zoned entirely for residence; there is no industrial or commercial zone. There is no sewer system and no paid fire department.
The original zoning ordinance was adopted September 9, 1941. Two zones were established, both residential; A covered about two-thirds of the township, including plaintiffs' land, called for minimum frontage of 100 feet and a lot area of not less than 10,000 square feet; and B, the remainder, which required minimum frontage of 50 feet and an "area governed by depth of property shown on any map now on file at the County Seat." No provision was made for industrial, commercial or retail business use.
On November 9, 1949 (after some earlier changes which need not be discussed), an amendment was approved which placed all but a small portion of the western half of the community in an AA zone. This alteration, which affected plaintiff's tract, fixed the lot size at one-half acre and the minimum frontage at 100 feet.
The supplement with which we are concerned was introduced on May 31, 1955, and ultimately adopted on September 13, 1955 with the modifications which lie at the core of the problem now presented for determination. An additional zone, AAA, was set up and approximately 75.996 acres, including those of the plaintiffs, were placed therein. As originally proposed, it contained about 35.65 more acres, all but 13+ of which adjoined their land on two sides; and the 13+ (Block 1302) were immediately to the south of the adjoining lands. Judging by the map in evidence (as will appear) the full area first proposed for the AAA district seems to be set apart from the rest of *21 the AA area by natural lines of demarcation. However, the 35.65 acres, although within these lines, were left in the AA, or one-half acre zone.

*22 In many zoning cases a simple map speaks more graphically than thousands of words. Such is the situation at hand, and we are including herein a portion of the zoning map which vividly portrays the physical layout of the section under discussion.
Attention is drawn immediately to certain physical facts disclosed by the sketch. The locality in question is roughly triangular in shape; it is bounded on the north at the base by the Borough of Hillsdale line, on the west by the Borough of Hohokus line, on the east by Van Emburgh Avenue all the way from the base at the Hillsdale boundary to the apex at the Hohokus boundary. So at the very outset it seems sound to say that these natural boundaries render the enclosed area prima facie a subject for a separate zone unless the condition of the land or the existing uses would make such separation unreasonable. Or to put it another way: if the land in the triangle is generally of the same character and present uses are not discordant and the governing body were desirous of creating a high type residential zone of one-acre lots, this location seems an ideal place to create it. Manifestly, this idea suggested itself to the township committee and the planning board, because the supplement to the ordinance as introduced was drawn that way. The testimony reveals additional factors which undoubtedly stimulated the original plan, namely, that lots in the adjoining portion of Hohokus must be at least an acre in size with a 200 foot frontage, that the apex of the triangle formed by the Hohokus line and Van Emburgh Avenue is about at the boundary line of the Village of Ridgewood, also a residential section, and that in neighboring Hillsdale the lot size mandate is 100 feet frontage and 15,000 square feet in area.
The township committee referred the ordinance in its original form to the planning board, which conducted a public hearing thereon at which property owners south of Washington Avenue protested the change. This avenue runs east and west through the entire triangle somewhat north of the center, with approximately 59 acres lying south and about 52.43 acres north of it. Thereafter the *23 board recommended and the governing body altered the new zone as portrayed by the map. The heavily shaded section of the triangle was retained in the proposed AAA district; the lightly shaded portions were excluded and left in the AA or one-half acre zone.
Once again the drawing is illuminating. It clearly shows the jig saw which resulted from the excision of certain of the tracts south of Washington Avenue. The only block not removed from the original plan is 1202, consisting of 23.54 acres, the southerly portion of which contains plaintiffs' 17.94 acres and the northerly portion, the land of one Kes (formerly owned by Burke and usually referred to in the record as the Burke house or property), containing 5.60 acres. This land fronts on Washington Avenue from the Hohokus line to the excluded block 1203. At the westerly end along the Hohokus line, plaintiffs own in fee a 50-foot right of way from their property across that of Kes into Washington Avenue.
It should be noted for purposes of emphasis that the AA zone continued west across Van Emburgh Avenue to the easterly line of block 1202 and southerly from Washington Avenue so as to include blocks 1203 and 1204. Then at the southerly end of 1202 and 1204 the AA zone widened so as to spread from Van Emburgh Avenue west to the Hohokus line, and to encompass blocks 1301, 1302 and 1303 at the southerly end of the triangle, about at the junction of Hohokus and Ridgewood.
Plaintiffs strenuously oppose the imposition on them of the one-acre zone under the circumstances. They take what appears to be a reasonable position. They voice no objection to the inclusion of their property in the one-acre zone, providing all the land within the triangle is treated alike. And they urge that since the character of the land is substantially the same, discrimination results to them when block 1202 (of which their property forms about three-fourths), just one out of six similarly situated south of Washington Avenue, is set apart for individual treatment. In the alternative, they contend that if the character of these five tracts is such that reasonable use treatment justifies *24 their retention in the AA district, then all the land south of Washington Avenue, a natural zone perimeter, should be retained there.
These considerations bring us to the application of fundamental principles of zoning. There can be no doubt that the borough fathers may divide the municipality into districts which are best suited to carry out the purpose of zoning (N.J.S.A. 40:55-31) and limit the use of the land within the districts, N.J.S.A. 40:55-30. But these regulations must be in accordance with a comprehensive plan (N.J.S.A. 40:55-32), which has been defined to signify one which takes into account the variant interests affecting the physical layout of the community and accommodates them to the interest of the community as a social unit. Hochberg v. Borough of Freehold, 40 N.J. Super. 276, 287 (App. Div. 1956).
A classic expression of the scope of the power to zone may be found in Katobimar Realty Co. v. Webster, 20 N.J. 114, 123 (1955), where Justice Heher said:
"It is fundamental in zoning policy that all property in like circumstances be treated alike. The use restraints must be general and uniform in the particular district. Beirn v. Morris, 14 N.J. 529 (1954). The essence of zoning is territorial division in keeping with the character of the lands and structures and their peculiar suitability for particular uses, and uniformity of use within the division. The genius of constitutional and statutory zoning process is the regulation of land and buildings by districts according to the nature and extent of their use; and it goes without saying that arbitrary deviation from the general rule is forbidden, on constitutional principle as well as the policy of the statute. Undue discrimination in treatment and classification vitiates the regulation. Schmidt v. Board of Adjustment, supra [9 N.J. 405]; Collins v. Board of Adjustment of Margate City, 3 N.J. 200 (1949). The constitutional uniformity and equality requires that classification rest on real and not feigned differences, such as make for a distinction having some relevance to the purpose for which the classification is made, i.e., zoning by districts `in accordance with a comprehensive plan' that takes into account the `nature and extent' of the use of land and buildings within the district, the statutory considerations to be served by zoning, the `character of the district and its peculiar suitability for particular uses,' `with a view of conserving the value of property and encouraging the most appropriate use of land throughout the municipality.'"
*25 And see, Raskin v. Town of Morristown, 21 N.J. 180, 193 (1956); Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509, 513 (1949); Clary v. Borough of Eatontown, 41 N.J. Super. 47, 64-65 (App. Div. 1956); Rockaway Estates, Inc., v. Rockaway Township, 38 N.J. Super. 468, 475 (App. Div. 1955).
In the light of these standards, what is the basis or the justification for this 76 acre zone  2% of the total municipal area? But more specifically, are any of the vital purposes of zoning served reasonably by withdrawing plaintiffs' land from its environment and attaching it as the terminal point of an upgraded zone already divided by a county road which might well provide the line of demarcation? Or put another way: is not block 1202, and particularly the plaintiffs' portion of it, discriminated against when the remaining tracts south of Washington Avenue are left untouched in a less restricted district?
Some effort was made at the hearing in the Law Division to demonstrate physical differences between 1202 and the other five blocks not taken out of the AA district. No one disputed that the entire area in the triangle was properly devoted to residential use. However, the testimony showed that the land along Washington Avenue contained a rise which ran westerly from Van Emburgh Avenue to a crest near the center of plaintiffs' property; then it sloped downward from that point to the Hohokus line. The hill ran throughout plaintiffs' acreage but tapered off somewhat toward its southerly end and the lots became more level as they neared the intersection of Van Emburgh Avenue and the Hohokus line. And the suggestion is that the topography of plaintiffs' acres is therefore more akin to that on the north side of Washington Avenue. This is a slim reed on which to predicate a zone difference and a use restraint. Substantial factual support is lacking for the opinion that plaintiffs' land is marked by any such physical differences as would warrant different treatment from the other properties south of the avenue.
Defendant's witnesses rendered lip service to the standards set out in N.J.S.A. 40:55-32. Actually, in this residential *26 area, whether it all remains subject to the AA or the AAA restrictions, problems of traffic, undue concentration of population, overcrowding of land or buildings are de minimis.
The further explanation is offered that removal of plaintiffs' acreage from the AA area was justified because the $70,000 home built on the 5.60 acre plot running along the south side of Washington Avenue and 300 feet from plaintiffs' northerly line, should be protected as well as another expensive home across the avenue and about 800 to 1,000 feet from plaintiffs. Assuming a desire to do this, would not the purpose have been served equally well by ending the zone at the Kes southerly boundary, which is plaintiffs' northerly line? It is said also that the AAA zone as laid out, serves the purpose of setting aside a portion of the borough for the construction of high type homes, some of which already exist there. Unquestionably such a district can be provided so long as it is done in reasonable conformity with the purposes of overall municipal zoning. Fischer v. Township of Bedminster, 11 N.J. 194 (1952). Of course, a desire to accommodate an individual property owner or particular neighboring owners in the AAA section would not be legally sufficient. The test is not whether the designation encourages the most appropriate use of lands of an individual or group of persons but whether as part of the whole treatment of land in the municipality the new district represents reasonably integrated community zoning, bearing in mind the character of the land and the uses thereof in relation to the neighboring portions of the municipality. Raskin v. Town of Morristown, supra, 21 N.J., at page 196. The wishes of a group of neighbors or even a plebicite by them would no more justify including plaintiffs' land in the AAA zone than such wishes or action of the owners to the east and north would warrant exclusion therefrom of their equally circumstanced property. Northwest Merchants Terminal, Inc., v. O'Rourke, 191 Md. 171, 60 A.2d 743, 752 (Ct. App. 1948).
In support of the final delineation of the AAA zone and particularly for the exclusion of blocks 1203, 1204, 1301, *27 1302 and 1303, much stress is laid upon the assertion that their inclusion would result in such a number of nonconforming uses as to constitute improper zoning. In effect, the statement is that those blocks while restricted to one-half acre lots had been so improved that a character of use inconsistent with their assignment to the one acre zone had been established.
The statements of respondent's witnesses in this connection give the impression that they have an inordinately broad view of the nonconforming use. The fact that plot plans or subdivision maps outlining lots of half acre size for the future development of these tracts have been filed and approved by the planning board or township committee, would not create a legal nonconforming use if the zone requirement were increased to one acre. The mere unexecuted intention to build on half-acre lots would not prevent imposition of the higher requirement. Guaclides v. Borough of Englewood Cliffs, 11 N.J. Super. 405, 415 (App. Div. 1951); Board of County Commissioners, etc. v. Snyder, 186 Md. 342, 46 A.2d 689 (Ct. App. 1946). In this connection it may be noted, also, that on May 31, 1955, the day on which the supplementary ordinance under study was introduced, the township committee approved the subdivision of Lot 2, Block 1302, into three lots containing less than one acre each. Such action incites some suspicion as to whether there ever was a purpose to place all the property south of Washington Avenue in the proposed zone.
Obviously, if a section of a municipality has been so built up on half-acre lots as to establish its character, a change of zone which would cause many nonconforming uses to spring into being immediately would undoubtedly be invalid. Consequently, in order to appraise the substance of defendant's position in this respect, the excluded blocks must be studied for existing uses. In doing so, we shall outline the number of acres in each block south of Washington Avenue, the number of homes built therein, and the area of the plot on which the home is built.

*28
Block Total Number of Area of lot
 acres houses
1202 23.54 1 5.60 acres
1203 6.50 2 1- 1.35 "
 1- 5.15 "
1204 3.40 3 1- 1 "
 2- 1/2 "
1301- 9.50 2 1- 7.05 "
 1- 2.48 "
1302- 13+ 2 1- 1.62 "
 1- 1/2 "
1303- 3.25 3 each 1/2 "
 _____ __ ____________
 59.19 13 Average 2.09 "

Thus it appears that out of 13 homes located south of Washington Avenue, only six are on lots of less than an acre. The testimony reveals also that some of them were built before the borough was zoned at all. I cannot agree that if all these blocks were consigned to the AAA district, the six nonconforming uses would represent substantial incongruity.
The conclusion that these inconsistent uses are not significant is emphasized when a simliar inspection is made of the area north of Washington Avenue where the expensive homes are said to be. That area contains 52.43 acres and is divided into two blocks on the zoning map, 1101 and 1201. The same classification shows:

Block Total Number of Area of lot
 acres houses
1101 42.64 9 1.10
 2.32
 2.37
 .96
 2.98
 4.41
 1.59
1201- 9.79 3 5.15
 .951
 1.59
 .88
 1.44
 _____ __ ____________
 52.43 12 Average 2.15

*29 So in this northerly section of AAA there are 12 homes, of which three are situated on less than an acre; one of them fronts on Washington Avenue. These are now nonconforming uses. Moreover, the tax map shows four additional vacant lots (three of them contiguous) fronting on Van Emburgh Avenue, each of which is less than one acre; one of them is less than one-quarter acre. Whether the three referred to are in the hands of one owner is not shown. If not, presumably all four represent potential applications for variance.
My colleagues seem to favor the view of Bassett that ordinarily a zone boundary should be established "a standard distance back from the street line" (Bassett, Zoning 95 (1936)), and failure to do so "unless great care is exercised" will "give the municipal attorney a `legalistic migraine.'" As to this, the observation must be made that the AA zone line south of Washington Avenue enjoys no uniform or "standard" set back distance from Van Emburgh Avenue. The zigzag westerly block line boundaries mark the distance. So obviously Bassett's theory played no part in the scheme. Moreover, if absence of a standard set back line from Van Emburgh Avenue would create a legalistic migraine, one cannot help wondering what form of aspirin will provide the antidote along that avenue in the more favored block 1101 north of Washington Avenue where no set back zone line exists at all.
One further note may be injected. The permitted uses in both AAA and AA zones are the same: residences with a minimum floor area of 1,200 square feet, office of a professional person residing on the premises, public libraries, churches and other places of worship, parish houses and Sunday school buildings, country clubs, museums, art galleries, and municipal buildings, farms, poultry farms, pet stock farms, nurseries, dairies, greenhouses, farm buildings, and community center buildings, excluding any commercial dancing establishment or bowling alley or activity conducted for gain; no building is permitted to occupy more than 20% of the area of the lot on which it is built.
*30 The analysis of the record demonstrates convincingly that the entire 111+ acres within the triangle might well be set apart as originally provided for in the ordinance as one zone either with a one or a one-half acre lot limitation. It is not necessary to decide which limitation should be ordained. Nor is it necessary to decide whether it would be improper to treat Washington Avenue as the line of demarcation between the AAA and the AA zones. But it is plain, and I so conclude, that there is no reasonable justification in the borough's zoning authority for treating plaintiffs' 17.94 acres differently from the other blocks south of Washington Avenue and west of Van Emburgh Avenue. Such physical partition is patently capricious. Rockaway Estates v. Rockaway Township, supra. In my judgment, it is arbitrary and discriminatory to use their land to protect the Kes property along the southerly border of Washington Avenue, or to employ it as a buffer between the AAA zone and the development of the easterly and southerly portions of the triangle in the AA zone below that avenue. Plaintiffs have pleaded a willingness to accept either the one-acre or the one-half acre zone provided all like circumstanced property in the area is handled alike. The basic spirit of zoning entitles them to no less.
I am acutely aware of the judicial policy which ordinarily dictates abstention from interference with the exercise of legislative discretion of a township committee. However, when that discretion is exercised in such a discriminatory fashion as to constitute an arbitrary interference with the basic right of private property rather than a reasonable regulation of the use of such property in the public interest, the duty of the court to invalidate it is beyond question. As the Supreme Court said in Katobimar Realty Co. v. Webster, supra:
"This relation to the public weal `should be proved in each case in its application to the lot in question.' Bassett, Zoning, 54. A zoning regulation may be voided as to a particular property included in a given zone by the arbitrary and unnatural running of boundary lines, not in keeping with a well considered plan. 58 Am. Jur. 967."
*31 There is a wide difference between the exercise of the police power in accordance with a comprehensive zoning plan which imposes mutual restrictions and confers mutual advantages, and the arbitrary granting of permission to one to use his property in a certain way and denying it to another similarly situated. The latter cannot be done either at the pleasure of a group of neighbors or at the whim of the municipal body.
Under all the circumstances, I hold the view that the supplementary ordinance is invalid so far as it applied to the plaintiffs' property. Accordingly, the judgment should be reversed.