58 N.J. Super. 108 (1959)
155 A.2d 560
MARC R. SMILOW, PLAINTIFF-RESPONDENT,
v.
CITY OF ORANGE PLANNING BOARD, BOARD OF COMMISSIONERS OF THE CITY OF ORANGE, DEFENDANTS-APPELLANTS, AND DERBRO, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1959.
Decided November 16, 1959.
*110 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Edmond J. Dwyer argued the cause for defendant-appellant, Derbro, Inc.
Mr. John R. Murray argued the cause for defendants-appellants, City of Orange Planning Board and Board of Commissioners (Mr. Thomas P. Kelly, on the brief).
Mr. Herbert L. Zuckerman argued the cause for plaintiff-respondent.
*111 The opinion of the court was delivered by HANEMAN, J.A.D.
On November 1, 1958 Derbro, Inc. (Derbro), the owner of a lot in the City of Orange known as lot 4, block 205, and located at 621 Berkeley Avenue, applied to the City of Orange Planning Board for approval of a subdivision thereof into three lots. This proposed subdivision was submitted to the planning board as a minor subdivision under Article IV of the land division ordinance of the City of Orange, which reads:
"4. Minor Subdivisions. Any subdivision containing not more than three (3) lots fronting on an existing minor street, not involving any new street or road or the extension of municipal facilities, and not adversely affecting the development of the remainder of the parcel or adjoining property and not in conflict with any provision or portion of the master plan, official map, zoning ordinance or this ordinance.
5. Major Subdivision. All subdivisions not classified as minor subdivisions."
Article V of said ordinance, as amended, reads:
"(b) If classified and approved as a minor subdivision by the unanimous action of the Subdivision Committee, a notation to that effect will be made on the sketch plat. In all such cases involving such exempted subdivisions, the Mayor of the City of Orange and the Municipal Clerk shall certify the exemption on the plat, deed or instrument to be filed with the County Recording Officer, and thereupon returned to the subdivider within one week following the next regular meeting of the governing body. No further governing body approval shall be required."
As for major subdivision, Article V continues:
"2: (b) The secretary of the planning board shall notify by mail at least five (5) days prior to the hearing all property owners within 200 feet of the extreme limits of the subdivision as their names appear on the municipal tax record. Said notice shall state the time and place of hearing, a brief description of the subdivision and that a copy of said subdivision has been filed with the municipal clerk for public inspection. The secretary shall also cause notice of the hearing to be published in the official newspaper or a newspaper of general circulation in the municipality at least ten (10) days prior to the hearing."
*112 On November 12, 1958 the planning board, having determined that the request was for a minor subdivision, approved the same without public notice or hearing. On December 18, 1958 the Board of Commissioners of the City of Orange approved the subdivision.
Plaintiff, who is the owner of a lot which faces Tremont Place and which has a common boundary with a portion of the southerly line of the Derbro lot, filed an action in lieu of prerogative writs contesting the validity of the foregoing action of the planning board and of the board of commissioners. Plaintiff's complaint alleges, in part, the following:
"4. The application asked that the lot in question be subdivided into three (3) smaller parcels, one of which would contain a garage-residence as the only structure thereon. The garage-residence was a nonconforming use in that it predated and failed to conform to the then effective Zoning Ordinance of the City of Orange. The sizes of the side lot and the front lot of this smaller parcel were less than the minimum standards of the Zoning Ordinance.

* * * * * * * *
6. On November 12, 1958, the defendant Planning Board approved said application of Derbro, Inc.

* * * * * * * *
8. This approval by the defendant Planning Board was beyond its authority in that the granting of said subdivision altered the character of the aforementioned nonconforming use in such a manner as to cause it to lose its immunity under the Zoning Ordinance of Orange, New Jersey. Such an alteration of character constituted the creation of a Zoning Ordinance violation, or the creation of a Zoning Ordinance variance, neither of which is within the Planning Board's power to grant.
9. The adoption and approval of the defendant Planning Board's instant action was beyond the authority of the defendant Board of Commissioners in that it constituted an unauthorized and improper action."
Cross-motions for summary judgment were made by plaintiff and Derbro pursuant to R.R. 4:58. The trial court concluded that the subdivision was illegal and judgment was entered for plaintiff. Defendants appeal from this judgment. The record was settled by order of the trial court.
The planning board and board of commissioners argue, inter alia, that: (1) the proposed subdivision was a minor *113 subdivision since it concerned no more than three lots and was not "in conflict with any provision or portion * * * of the zoning ordinance"; (2) Peterson v. Board of Adjustment of Town of Montclair, 7 N.J. Super. 282 (App. Div. 1950), is not apposite to the present cause and the trial court erred in relying thereon; and (3) the presumption of the validity of municipal action was not rebutted by plaintiff. They conclude that their action resulted in a legal subdivision.
Derbro argued that the subdivision was valid since it did not result in a violation of any section of the zoning ordinance of the City of Orange, and therefore was a "minor subdivision."
Plaintiff argues that: (1) the use and location of a building on the rear of lot 4, block 205 were in conflict with the purposes and provisions of the zoning ordinance; (2) Derbro, therefore, sought a major rather than a minor subdivision, and (3) as a result, the approval of the subdivision without prior notice and hearing was illegal.
The basic question which is the common denominator of all of appellants' contentions is whether the subdivision here sought was minor or major; all of appellants' arguments revolve about this pivotal query. In order to find the solution it is necessary to determine whether the proposed subdivision is "in conflict" with any provision or portion of the zoning ordinance, since it is undisputed that the other essentials of a minor subdivision, as set forth in the ordinance are here present.
The planning board and the board of commissioners argue that the words "in conflict" are not synonymous with the words "in violation." They rationalize that planning and zoning ordinances are separate and distinct and that it is not the duty, generally, of a planning board, when passing on a subdivision of plots, to concern itself with zoning regulations. They reason that a planning board, when functioning under a subdivision ordinance, "is not primarily concerned with zoning regulations, but with land division," *114 and this becomes clear and is made manifest on a reading of the statute dealing with subdivision standards. N.J.S.A. 40:55-1.15, which reads:
"Before the planning board may take the action of favorable referral and the governing body may approve subdivisions or before a planning board may be authorized to grant final approval, the governing body shall adopt by ordinance, standards for approving the design of subdivisions and the required street improvements, requirements for the submission of subdivision plats, and the procedure to be followed by subdividers. Where there is a municipal zoning ordinance, the standards in the subdivision ordinance with respect to minimum lot sizes and lot area requirements shall be identical with the provisions of the zoning ordinance. Where a zoning ordinance contains no such provisions or where there is no such ordinance, the standards including minimum lot sizes and lot area requirements shall be specified in the subdivision ordinance. * * *"
The statute, they say, indicates that the main thrust of subdivision is intelligent lot division or land area. Under the statute, it is said: "the norms to be followed in subdivision do not concern the technical zoning provisions. The norms are those naturally concerning subdivision, namely, lot area and lot size. These are the only zoning standards the subdivider must, by the subdivision statute, concern himself with. This would indicate a common sense and a legislative intent to limit the area of concern for those passing on subdivision to the provision in the zoning laws directly concerned with the actual division of land." They conclude that the word "conflict" relates only to lot size and area requirements of the zoning ordinance and since there is no asserted "conflict" arising from any provision or portion of the zoning ordinance relating to lot size or area, the subdivision sub judice should be classified as minor.
Initially, therefore, it becomes necessary to determine whether the word "conflict" may be interpreted in the restricted sense as argued.
Planning and zoning are sometimes considered so closely related as to constitute a single concept. However, they are not identical. Mansfield & Swett, Inc. v. Town of West Orange, 120 N.J.L. 145, 148 (Sup. Ct. 1938); Antonelli *115 Construction Co. v. Milstead, 34 N.J. Super. 449, 455 (Law Div. 1955); 8 McQuillin, Municipal Corporations 31, § 25.08 (1957); Angermeier v. Borough of Sea Girt, 27 N.J. 298, 308 (1958); 101 C.J.S. Zoning § 4 (1958); Goldstein v. Lincoln Park Planning Board, 52 N.J. Super. 44, 50 (App. Div. 1958).
In Angermeier, supra, the court said, at page 308 of 27 N.J.:
"While municipal planning embraces zoning, the converse does not hold true. They are not convertible terms. Zoning is not devoid of planning, but it does not include the whole of planning. Zoning is a separation of the municipality into districts, and the regulation of buildings and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land. This is the constitutional sense of the term. 1947 State Constitution, Art. IV, sec. VI, par. 2. Planning has a much broader connotation. It has in view, as we have seen, the physical development of the community and its environs in relation to its social and economic well-being for the fulfillment of the rightful common destiny, according to a `master plan' based on `careful and comprehensive surveys and studies of present conditions and the prospects of future growth of the municipality,' and embodying scientific teachings and creative experience."
Zoning is generally regarded as an indispensible feature of planning. Phillips, State and Local Government in America 551 (1954). Zoning and planning are complementary tools and a fundamental and necessary interrelation exists between them. Together they provide a coordinated, adjusted and harmonious development of a municipality in accordance with a comprehensive plan. 68 Harv. L. Rev. 1154, 1155 (1955); Angermeier v. Borough of Sea Girt, supra; Roselle v. Wright, 21 N.J. 400, 408 (1956); Rockhill v. Chesterfield Tp., 23 N.J. 117, 129 (1957); Kiska v. Skrensky, 145 Conn. 28, 138 A.2d 523 (Sup. Ct. Err. 1958). Indeed, the achievement of an orderly, efficient and integrated community plan contemplates the use of many planning devices, including zoning, master planning, building code and subdivision. See Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 438 (1958) and Rockhill v. Chesterfield Tp., supra.
*116 The Legislature of this State has recognized the necessity of a coordination between planning and zoning. N.J.S.A. 40:55-1.8 provides:
"Wherever there is a planning board, such board shall have the additional authority and duty of acting as the zoning commission under article three of chapter fifty-five of Title 40 of the Revised Statutes."
In connection with the approval of a subdivision by a planning board without prior notice and hearing and without reference thereafter to the governing body, N.J.S.A. 40:55-1.15 provides:
"Where there is a municipal zoning ordinance, the standards in the subdivision ordinance with respect to minimum lot sizes and lot area requirements shall be identical with the provisions of the zoning ordinance. Where a zoning ordinance contains no such provisions or where there is no such ordinance, the standards including minimum lot sizes and lot area requirements shall be specified in the subdivision ordinance."
As noted, appellants argue that since subdivision of land concerns itself exclusively with land division, a "conflict" with the zoning ordinance would exist only if the proposed subdivision "conflicted" with its lot size or area requirements. To follow this argument to a logical and consistent conclusion, appellants must as well urge that a "conflict" with any provision or portion of the "master plan," as provided in the ordinance, would also exist only in this restricted sense. The inherent fallacy in such a construction becomes plain from a reading of N.J.S.A. 40:55-1.11, which reads:
"In scope the master plan may cover proposals for: (a) the use of land and buildings  residential, commercial, industrial, mining, agricultural, park, and other like matters; (b) services  water supply, utilities, sewerage, and other like matters; (c) transportation  streets, parking, public transit, freight facilities, airports, and other like matters; (d) housing  residential standards, slum clearance and redevelopment, and other like matters; (e) conservation  water, forest, soil, flood control, and other like matters; (f) public and semi-public facilities  civic center, schools, libraries, parks, playgrounds, *117 fire houses, police structures, hospitals and other like matters; (g) the distribution and density of population; (h) other elements of municipal growth and development."
Appellants would ignore all of the provisions of the master plan except lot size and lot area requirements. This is too ridiculous a result to warrant further comment.
The simple fact is that the City of Orange, at least for minor subdivision, has determined that the subdivision ordinance shall not conflict with any provision or portion of the zoning ordinance. See Article IV, ¶ 4 quoted above. Had the governing body intended to repeat the statutory formula of N.J.S.A. 40:55-1.15 in the zoning ordinance it would not have said "any provision or portion of the * * * zoning ordinance * * *." In interpreting an identical subdivision provision of another municipality, we held that not only the subdivision per se but its aspects and consequences must conform to the entire zoning ordinance. Kotlarich v. Mayor and Council of Borough of Ramsey, 51 N.J. Super. 520, 531 (App. Div. 1958). Further, the legislative statement of required subdivision standards, referring only to lot size and area, can most logically be considered as applying to major subdivision. Lot size and area are reasonably associated with the subdivision of vacant lands. That this was the legislative concept is further indicated by other subdivision standards of the statute, which include subdivision design and street improvement  elements which seem to have reference to major subdivision of vacant land only. A reading of the subdivision ordinance here in question would indicate that this interpretation was adopted by the city itself, in Article VIII, which sets design standards for streets, blocks, lots, and public use and service areas.
In our view, "conflict" as here used is synonymous with "violate." To hold otherwise would be to indulge in a semantic exercise of the most tenuous sort. Any other conclusion could lead to the attempted avoidance and emasculation of the zoning ordinance by action of the planning board, and ultimately to a state of utter confusion. Such *118 a result should not be tolerated, whether arising by act of an individual or of an official body. Cf. Collins v. Board of Adjustment of Margate City, 3 N.J. 200 (1949); Peterson v. Board of Adjustment of Town of Montclair, supra.
We proceed to consider whether the instant subdivision was in "conflict with any provision or portion of the * * * zoning ordinance." Plaintiff argues that such conflict existed in the following respects: (1) use; (2) setback from Tremont Place, and (3) side yard setback.
The following sketch of a survey portrays the lands here involved.

*119 The buildings designated "A" and "B" on this sketch were delineated by the municipal building inspector and not by the engineer. The plaintiff's dwelling shown to the south of the Derbro property was also delineated by someone other than the engineer. None were drawn or located on the survey according to scale. However, by stipulation subsequent to argument, counsel have agreed that: To the south and within 200 feet of the Derbro property there are two residences, constructed between 1937 and 1939, each having a setback from Tremont Place of 25 feet. To the north and within 200 feet of the Derbro property there are two buildings designated "A" and "B" on the sketch. "A" is a structure similar to the building on the rear of lot 4, block 205. "B" is a garage. They are set back the distances shown on the sketch.
From the record and sketch as settled and supplemented as above noted, it appears: The lots in question are located within a district described in the zoning ordinance as Residence "A" District. Two buildings now stand on lot 4, block 205, both of which were constructed prior to 1922, the date of the adoption of a zoning ordinance by the City of Orange. A 2 1/2 story building facing Berkeley Avenue was designed for residential purposes, and has been continuously so used since 1922. On the rear of the lot and toward the northeast corner there exists a 1 1/2 story building which was referred to in the affidavits as a "carriage house," but was designated on the foregoing sketch as a "dwelling and garage."
Since we are not concerned with the former of these two buildings, our discussion will be limited to the latter, its use and location being the crux of the problem with which we are confronted. The following remarks, unless otherwise specifically noted, refer to that building.

*120 I.

USE.
The applicable sections of the zoning ordinance read:
"Section 2: (a) Within any Residence `A' District, as indicated on the Building Zone Map, no building shall be erected and no building or premises shall be used for any business or industry permitted in Sections 5 and 6 of this ordinance, nor for other than one or more of the following specified purposes:
(1) A dwelling for one family or for one housekeeping unit only provided that nothing herein shall prevent the taking of roomers or boarders.

* * * * * * * *
(7) Accessory uses, customary or incident to the above uses and located on the same lot with them. Except as provided above, `accessory uses' shall not include any uses customarily carried on as a business or as an industry, nor any driveway or walk giving access thereto, nor any structure used as a billboard or advertising sign.

* * * * * * * *
Section 7: Exceptions and Special Provisions:

* * * * * * * *
(c) There shall be no dwelling or sleeping quarters behind another building on the same lot, except that not more than one chauffeur may be housed within an accessory garage and except that on a lot at least one-half acre in area, dwelling quarters for servants may be provided where such dwellings shall have a clear access at least 25 feet wide to a street."
Prior to 1952 the building was used as a garage or carriage house. Since that year it has been used as a one-family residence unit without a variance from the zoning board of adjustment having been first obtained. The functional employment of the rear building as a carriage house or garage was a use customarily incident to the use of the main building facing Berkeley Avenue and hence was a permitted accessory use under the zoning ordinance until 1952. Zahn v. Newark Board of Adjustment, 45 N.J. Super. 516 (App. Div. 1957). Thereafter, the change in function terminated its accessory characteristics, and its use as a one-family residence unit violated both the provision that no lot *121 should be used for more than one dwelling for a single family and that there should be no dwelling or sleeping quarters behind another building except that to be used for one chauffeur within an accessory garage. The use as a dwelling was an illegal nonconforming use so long as lot 4 remained a single lot.
What Derbro is attempting to do here is to legitimatize an illegal use through the instrumentality of the planning board and without recourse to the zoning board of adjustment for a variance. Derbro seeks to release an accessory building from its use limitations and to invest it with the status of a main building. This is comparable to what was attempted in Collins v. Board of Adjustment of Margate City, supra, and in Peterson v. Board of Adjustment of Town of Montclair, supra.
In Collins, the owner of a lot upon which was erected a residence and a garage with dwelling quarters  the latter being a permitted accessory use for domestic employees  conveyed the rear portion of the lot containing the accessory building to a third party who thereafter proceeded to lease it for residence purposes. The court said, at page 207 of 3 N.J.:
"What is sought here is the release of the accessory building from the use limitations affixed to it as such by the ordinance, and thereby to invest it, with the like residence status as the principal dwelling, for the realization of the summer residential rental value, and thus to defeat the regulation governing land uses in Residence `A' districts. It goes without saying that this is an inadmissible procedure, for it would set at naught the provision of the ordinance for Residence `A' districts. It would put it within the power of the individual landowner to avoid the restriction by a subdivision of his lot. The partition of the lot by the cited conveyance can have no such consequence; the conveyance was made subject to the regulations of the ordinance. It is fundamental that conveyances of land are conditioned by all regulations made in the reasonable exercise of the zoning authority." (Emphasis supplied)
In Peterson, supra, plaintiff appealed from defendant's denial of an application for a variance which would permit an accessory building, after subdivision of the lot by the *122 owner, to be used for residence purposes. In affirming defendant's refusal, the court declared, at page 286 of 7 N.J. Super., that the granting of the requested variance would:
"* * * (1) permit a 2 1/2 foot side yard on one side and no side yard on the other side instead of two side yards of at least 12 and 18 feet, respectively; (2) permit a 16-foot rear yard instead of a 30-foot rear yard; (3) permit a total lot area of less than 11,000 square feet within 200 feet of the street line instead of a minimum of 20,000 square feet; and (4) permit the forming of the new lot No. 91 in spite of the prohibition in the zoning ordinance against the formation of any new lot from part of a parcel of land on which there is an existing building, except where the division is `effected in such manner as not to impair any of the provisions of this Ordinance.'"
In both cited cases, the owner's individual action in subdividing, and thus attempting to legitimatize a prior illegal use, was disapproved. As in Peterson, supra, the proposed subdivision now before us will continue to violate the terms of the zoning ordinance in various respects hereafter enumerated. The difference between the case sub judice and Collins and Peterson is one of form and not of substance. The only real distinction lies in the fact that Derbro is attempting to circumvent the zoning ordinance through the instrumentality of the municipal planning board, while in Collins and Peterson the owner attempted to attain the same results by his own individual act without prior application to a planning board. We hold that, contrary to defendant's contention, both Collins and Peterson are applicable and that the use of the rear building for residence purposes under the facts here present, even after subdivision, would conflict with the purposes and provisions of the zoning ordinance.

II.

SETBACK FROM TREMONT PLACE.
Section 7 of the zoning ordinance provides, among other things:
*123 "(k) Except along one street frontage of a former lot, no story of a building shall be nearer to the street line of any street on which it faces than the general average alignment of the corresponding stories of existing buildings within 200 feet on each side of the lot and within the same block, provided that no building shall be required to set back more than 40 feet from any street line."
The side of the building facing Tremont Place is not parallel to that street; at its closest point it is set back 7.65 feet.
Both plaintiff and defendant have agreed on the average alignment of the buildings within 200 feet to the north, designated "A" and "B" on the foregoing sketch. "A" has a setback varying from 1.40 to 10.23 feet from Tremont Place or an average of 6.50 feet. "B" has a setback from Tremont Place of 6.48 feet. They also have agreed that each of the two buildings to the south of the subject property is set back 25 feet from Tremont Place. The general average alignment of existing buildings within 200 feet on each side of the new Derbro lot and within the same block is, therefore, 15.745 feet.
But, defendants argue that since the "carriage house" and the buildings to the north designated "A" and "B" were all constructed 25 years prior to the buildings to the south of the "carriage house," only "A" and "B" should be included in ascertaining the average setback of the buildings within 200 feet. Derbro asserts that "the two buildings furnished the criteria for determining setback." If we accept this statement literally, it must mean that the carriage house should conform to the average of these buildings. The facts of the situation belie the argument. What Derbro overlooks is that the subject building was designed for and used as an accessory building at the time of the adoption of the ordinance. As above noted, the accessory function as a carriage house was abandoned and it has, since 1952, been illegally used for a nonconforming purpose  a one-family dwelling unit. It was agreed at oral argument that plaintiff built his residence immediately to the south of the Derbro property *124 in 1938 or 1939 and that the house immediately to the south of plaintiff's property was built in 1937 or 1938. The two residences were already long in existence before the initial use of the carriage house for residence purposes. The attempt of the subdivision is to create a new legal functional use for the carriage house. It must be remembered in this connection that as a result of the subdivision, the use as a carriage house  the accessory use  would no longer be permitted under the terms of the zoning ordinance. Moreover, there has never been any legal residential use. Under the facts here present, the determinative date is the date of the application for subdivision and not the date of the original construction of the carriage house. The setbacks must be ascertained as of that time. As in Collins and Peterson, supra, if we reached any other conclusion the purpose and intent of the ordinance would be frustrated and set at naught by a subterfuge.
We hold, therefore, that the lots to the south must be considered in ascertaining the average alignment. With these lots included, Derbro's building conflicts with the purposes and provisions of the zoning ordinance which prohibits a story thereof from being nearer to a street line than the general average alignment of the corresponding stories of existing buildings within 200 feet on each side thereof.

III.

SIDE YARD SETBACK
Section 1 (c) of the zoning ordinance provides:
"Every room in which persons live, sleep, work or congregate shall be adequately lighted and ventilated in all parts by at least one window or other opening, not in the ceiling, and giving directly upon a street or upon a yard, court or other open space located on the same lot and conforming with the requirements of this ordinance."
*125 Section 2 (d) provides:
"A side yard is required along the full length of each side lot line. The sum of the average widths of both side yards for a two or two and one-half story building shall be at least 15 feet and for a one-story building or for one-story projections 10 feet, except that for each one foot that a lot is less than 50 feet wide at the time of the passage of this ordinance four inches may be subtracted from the above aggregate widths. No side yards shall be less than six feet in average width at the second story level, nor less than four feet at the ground level, nor less than four feet in minimum width in any case, except that where no rooms depend on required window openings giving solely on one of these side yards, such side yard may be not less than four feet wide at the second story level and not less than three feet wide at the ground story level. The width of a court at any level shall be equal to one-half of its height at such level. Within 50 feet of the main front wall of a building no garage or stable shall be placed within 12 feet of any side lot line."
The northerly side of the Derbro building is not parallel to the northerly lot line. The corner of this side of the building closest to Tremont Place is 7.49 feet distant from that lot line, and the corner furthest from Tremont Place is 3.98 feet distant therefrom. The building inspector's affidavit discloses the following: There are three windows on the first floor level. Two lead "to the area where a heating unit is installed" and the remaining window "leads to a hall which in turn leads to the second floor of the building." The hall has a large door fronting on Tremont Place. There is also a window on the second floor which is 4 1/2 feet from the property line. Nowhere is there a description of the room to which this last window furnishes light and air nor is there any statement whether such room depends on the window opening for adequate lighting and ventilation as defined in the zoning ordinance.
Derbro argues that the affidavit of the building inspector demonstrates that no room depends on the required window openings furnished by these four windows.
A required window opening referred to in Section 2 (d) is that described in Section 1 (c) of the ordinance. Under the delineation of the latter section and the facts *126 here present, we are of the opinion that whether or not the first floor windows are required to furnish adequate light and ventilation to the rooms upon which they open, there is no showing that the second floor window is not so required. Since Derbro was seeking to bring itself within the exception to the normal side yard area, the burden fell upon it to prove that it was entitled to such treatment. The affidavit of the building inspector studiously avoided stating that this window was not a required opening.
We do not subscribe to Derbro's argument that since the first floor setback is three feet there is a compliance with the ordinance. The ordinance required that the side yard shall be not less than six feet in average width at the second floor level and four feet at the ground level, nor less than four feet minimum in any case unless no required window openings face on such yard. This can mean only that where there is such a window opening in any floor, the width of the side yard must be at least four feet. The absence of any required window opening in the first floor does not bring the northerly wall within the exception so long as there exists a required window opening on the second floor; it was the intent of the ordinance to reduce the side yard width at ground level to three feet and at the second floor level to four feet only where there were no required window openings at either floor level.
The side yard dimensions conflict with the provisions of the zoning ordinance.
What we have said above disposes of defendants' argument concerning Peterson v. Board of Adjustment of Town of Montclair, supra.
We recognize that a planning board passing upon an application for a subdivision is "acting in a quasi-judicial capacity, in the same way as [is] the board of adjustment * * * in zoning matters under R.S. 40:55-39 * * *," Kotlarich v. Mayor and Council of Borough of Ramsey, supra, 51 N.J. Super. at page 541, and thus a presumption of correctness attaches to its decision. Rexon v. Board of *127 Adjustment of Borough of Haddonfield, 10 N.J. 1 (1952). However, we find that plaintiff has borne the burden of overcoming such presumption.
We therefore conclude that the subdivision sought by Derbro was a major subdivision and that the planning board was in error in concluding that it was a minor subdivision.
Affirmed.